<u>Sugarloaf Alliance, Inc. v. Frederick County, Maryland</u>, No. 32, September Term, 2025

**MARYLAND PUBLIC INFORMATION ACT – ATTORNEYS' FEES – DETERMINATION OF AWARD – REMAND –** Where trial court determined amount of attorneys' fees to be awarded to substantially prevailing complainant under Md. Code Ann., Gen. Provisions (2014, 2019 Repl. Vol.) § 4-362(f), but it was not clear that trial court applied Maryland Rule 2-703(f)(3), governing lodestar approach to calculation of attorneys' fees, and court appeared to rely on improper factors in reducing amount of award, Supreme Court of Maryland reversed Appellate Court of Maryland's judgment affirming award and remanded case to that Court with instructions to vacate trial court's award and to remand case to trial court for it to reconsider petition for attorneys' fees.

Circuit Court for Frederick County
Case No. C-10-CV-22-000369

Argued: March 10, 2026

IN THE SUPREME COURT

OF MARYLAND

No. 32

September Term, 2025

_____

SUGARLOAF ALLIANCE, INC.

v.

FREDERICK COUNTY, MARYLAND

_____

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

_____

Opinion by Watts, J.
Gould, Eaves, and Killough, JJ., dissent.

_____

Filed:  July 14, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This case involves an issue as to an award of attorneys' fees under the Maryland Public Information Act ("MPIA"), Md. Code Ann., Gen. Provisions (2014, 2019 Repl. Vol.) ("GP") §§ 4-101 to 4-601. "The MPIA governs access to public records"[1] and "reflects the legislative intent that citizens of the State of Maryland be accorded wide-ranging access to public information concerning the operation of their government." Trs. of Walters Art Gallery, Inc. v. Walters Workers United, 492 Md. 92, 119, 340 A.3d 786, 802 (2025) (citation modified). The MPIA provides that "[a]ll persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees" and "unless an unwarranted invasion of the privacy of a person in interest would result," the MPIA "shall be construed in favor of allowing inspection of a public record," with the least cost and delay to the person that requests the inspection. GP § 4-103(a), (b). A custodian of records, however, shall deny inspection of a public record or any part of a public record under circumstances specified in the statute, such as where, by law, the public record is privileged or confidential. See GP § 4-301(a).

Typically, a person who wants to inspect a public record submits a written application to the custodian. See GP § 4-202(a). Under GP § 4-203(a)(1), "the custodian shall grant or deny the application promptly, but not more than 30 days after receiving the application." Pursuant to GP § 4-203(b)(1), "[a] custodian who approves the application shall produce the public record immediately or within a reasonable period that is needed to

---

[1]Under GP § 4-101(k)(1)(i), a "public record" is defined as the original or any copy of any documentary material that "is made by a unit or an instrumentality of the State or of a political subdivision or received by the unit or instrumentality in connection with the transaction of public business[.]"

retrieve the public record, but not more than 30 days after receipt of the application." Under

GP § 4-203(b)(3), "[f]ailure to produce the public record in accordance with this subsection

constitutes a denial of an application that may not be considered the result of a bona fide

dispute unless the custodian has complied with paragraph (2) of this subsection and is

working with the applicant in good faith."[2]

Where "a person or governmental unit is denied inspection of a public record or is

not provided with a copy, printout, or photograph of a public record as requested, the person

or governmental unit may file a complaint with the circuit court." GP § 4-362(a)(1). Under

that circumstance, the defendant has the burden of sustaining a decision to deny inspection

of a public record or to deny providing a copy, printout, or photograph of a public record.

See GP § 4-362(b)(2). Where needed, the circuit court is permitted to examine the public

record at issue *in camera* "to determine whether any part of the public record may be

withheld" under the MPIA. GP § 4-362(c)(2).

Under the MPIA, a defendant governmental unit may be liable to a complainant for

---

[2]GP § 4-203(b)(2) provides:

If the custodian reasonably believes that it will take more than 10 working days to produce the public record, the custodian shall indicate in writing or by electronic mail within 10 working days after receipt of the request:

(i) the amount of time that the custodian anticipates it will take to produce the public record;

(ii) an estimate of the range of fees that may be charged to comply with the request for public records; and

(iii) the reason for the delay.

statutory damages and actual damages as follows:

> (1) A defendant governmental unit is liable to the complainant for statutory damages and actual damages that the court considers appropriate if the court finds that any defendant knowingly and willfully failed to:

>> (i) disclose or fully to disclose a public record that the complainant was entitled to inspect under this title; or

>> (ii) provide a copy, printout, or photograph of a public record that the complainant requested under § 4-205 of this title.

> (2) An official custodian is liable for actual damages that the court considers appropriate if the court finds that, after temporarily denying inspection of a public record, the official custodian failed to petition a court for an order to continue the denial.

> (3) Statutory damages imposed by the court under paragraph (1) of this subsection may not exceed $1,000.

GP § 4-362(d).

Pursuant to GP § 4-362(f), if the circuit court "determines that the complainant has substantially prevailed, the court may assess against a defendant governmental unit reasonable counsel fees and other litigation costs that the complainant reasonably incurred." Where fee-shifting statutes such as the MPIA are involved, determining the prevailing party's attorneys' fee award is generally done by using the lodestar approach, under which factors listed in Maryland Rule 2-703(f)(3) are to be considered. See Monmouth Meadows Homeowners Ass'n, Inc. v. Hamilton, 416 Md. 325, 334, 7 A.3d 1, 6 (2010). Generally, the lodestar approach involves multiplying the number of hours reasonably spent on a case by a reasonable hourly rate, with adjustments made based on factors set forth in Maryland Rule 2-703(f)(3). See id. at 333-34, 7 A.3d at 6.

Sugarloaf Alliance, Inc. ("Sugarloaf"), Petitioner, is a non-profit organization

- 3 -

"dedicated to preserving, protecting, and restoring the unique natural and historical aspects of the Sugarloaf Mountain area and its environment[.]" In October 2021, Sugarloaf filed two MPIA requests with Frederick County, Maryland ("the County"), Respondent. After acknowledging receipt of Sugarloaf's requests, the County took no apparent action and produced no documents for Sugarloaf. Eight months later, in June 2022, Sugarloaf filed a complaint in the Circuit Court for Frederick County, alleging that the County violated the MPIA by failing to timely produce the requested records.

Almost two months later, the County filed an answer to the complaint and sent 20 documents to Sugarloaf in response to the MPIA requests, but withheld 136 other items, claiming they were exempt from disclosure under various privileges. Following a bench trial, in June 2023, the circuit court issued an oral ruling, directing the County to submit 13 of the withheld documents for *in camera* review and to provide Sugarloaf with the remaining documents. The County complied with the order.

In August 2023, Sugarloaf filed a petition for attorneys' fees, costs, and expenses, seeking a total of $48,813.62. At a hearing on the petition, before addressing the request for attorneys' fees, as to the withheld documents it reviewed *in camera*, which ended up being 15 documents, the circuit court ruled that 14 of the documents were properly withheld and that it would not order disclosure of the documents. After receiving evidence and hearing argument from the parties about Sugarloaf's petition for attorneys' fees, the circuit court took the matter under advisement. Thereafter, Sugarloaf filed a supplemental petition for attorneys' fees, seeking an additional $6,648. At the end of September 2023, the circuit court issued a written opinion and order, awarding Sugarloaf attorneys' fees in

the amount of $25,000. In a separate order issued the same day, the circuit court denied Sugarloaf's supplemental petition for attorneys' fees, with a notation that the request should have been presented at the hearing on the original petition.

Sugarloaf noted an appeal to the Appellate Court of Maryland, and the County noted a cross-appeal. On May 1, 2025, in a reported opinion, the Appellate Court affirmed the circuit court's judgment awarding Sugarloaf $25,000 in attorneys' fees, but vacated the order denying Sugarloaf's supplemental petition for attorneys' fees and remanded the case for further proceedings on the supplemental petition. See Sugarloaf All., Inc. v. Frederick County, 265 Md. App. 199, 204, 244, 246-47, 334 A.3d 1150, 1153, 1177, 1178 (2025). The Appellate Court concluded that the circuit court had not arbitrarily exercised its discretion or clearly erred in adjusting downward the amount of attorneys' fees awarded, and affirmed the $25,000 in attorneys' fees awarded to Sugarloaf in response to its initial petition. See id. at 244, 334 A.3d at 1177.[3]

Sugarloaf filed a petition for a writ of *certiorari*, which we granted. See Sugarloaf All., Inc. v. Frederick County, 492 Md. 410, 344 A.3d 675 (2025).

In this Court, Sugarloaf contends that the circuit court correctly applied the lodestar approach to the initial calculation of fees but abused its discretion by cutting the award of attorneys' fees almost in half for reasons that, according to Sugarloaf, are inconsistent with the purpose of the MPIA. Sugarloaf argues that in determining the $25,000 award, the

---

[3]The Appellate Court held, however, that the circuit court abused its discretion in denying the supplemental petition based solely on Sugarloaf's failure to raise it at the hearing on the original petition. See Sugarloaf All., Inc., 265 Md. App. at 247, 334 A.3d at 1178.

circuit court considered factors beyond those that are set forth in Maryland Rule 2-703(f)(3), and that the circuit court's use of the factors was "without reference to any guiding rules or principles" and constituted an abuse of discretion. (Citation modified). Sugarloaf requests that the $25,000 award of attorneys' fees be vacated and that the case be remanded to the circuit court "for a proper analysis of the attorneys' fee award consistent with the requirements of the MPIA[.]" The County responds that the circuit court determined a reasonable award of $25,000 in attorneys' fees and requests that we affirm the award.[4]

Upon review of the circuit court's opinion and order in which it awarded $25,000 in attorneys' fees to Sugarloaf, we conclude that in determining the amount of the attorneys' fee award, the circuit court considered circumstances not included in the factors set forth in Maryland Rule 2-703(f)(3) and that at least two of the factors discussed by the court were not relevant or appropriate for consideration under the lodestar approach—namely, that it would not ascribe an evil motive to County officials and that the citizens of the County would bear the burden of the attorneys' fees award.

In its opinion, after finding that Sugarloaf's attorneys' fees, totaling $48,813.62, were "customary and reasonable[,]" and discussing the two objectionable factors, without further explanation, the circuit court announced an award of $25,000. We are unable to

---

[4]The County raises no issue with respect to the Appellate Court vacating the circuit court's denial of the supplemental petition for attorneys' fees and remanding the matter for reconsideration and has not filed a cross-petition concerning the matter. As such, the Appellate Court's remand of the case to the circuit court for consideration of the supplemental petition for attorneys' fees is not in dispute.

conclude that the circuit court followed established principles or the Maryland Rules in determining the award, given that, after observing that the number of hours expended and hourly fees charged by Sugarloaf were reasonable, the circuit court forsook application of Maryland Rule 2-703(f)(3) and considered circumstances that were not appropriate for determination of an attorneys' fee award. Under these circumstances, we conclude that the circuit court did not follow the established standard for determining an attorneys' fee award and abused its discretion in determining the amount of the award. We reverse the Appellate Court's judgment affirming the award of $25,000 in attorneys' fees and remand the case to that Court with instructions to vacate the circuit court's award and to remand the case to the circuit court for it to reconsider the petition for attorneys' fees.[5]

## BACKGROUND

### Sugarloaf's MPIA Requests

In February 2020, the Frederick County Planning Commission ("the Planning Commission") conducted a Sugarloaf Community Meeting and Open House. During the meeting, Commissioners advised that the Planning Commission was starting work on a draft of a Sugarloaf Treasured Landscape Management Plan ("the Plan"). According to Sugarloaf, in March 2021, without explanation, the Frederick County Division of Planning and Permitting ("the Division") proposed significant changes to a draft of the Plan, which, among other changes, involved zoning reconfigurations. In July and September 2021,

---

[5]Nothing in our holding alters the Appellate Court's judgment vacating the circuit court's denial of Sugarloaf's supplemental petition for attorneys' fees and remanding for the circuit court to reconsider the supplemental petition.

- 7 -

members of the community voiced concerns about the Plan at Planning Commission meetings. Sugarloaf had begun to suspect that the County had been secretly communicating with Amazon Web Services about rezoning a large portion of the Sugarloaf region to construct industrial data centers.

On October 19, 2021, George Winkler, who was Sugarloaf's president at the time, submitted on Sugarloaf's behalf two MPIA applications to Assistant County Attorney Andrew J. Ford, the County's MPIA Coordinator. In the first request, Sugarloaf asked for "[c]opies of any emails, sent or received by [the County's Director of the Division], residing on any email servers owned, managed, used, or controlled by [the] County, which contained the word 'Sugarloaf'" for the period of February 1 to April 30, 2021. In the request, Sugarloaf stated that the County's Director of the Division is in charge of the office "responsible for textual changes made to the draft Sugarloaf Treasured Landscape Management Plan in or around early March 2021" and asserted that the "origin, impetus, author(s), and purpose of" the changes to the draft plan "are of great public interest and import."

In the second request, Sugarloaf asked for the following for the period of February 1 to April 30, 2021:

> Copies of any emails, sent or received by Frederick County personnel, residing on any email servers owned, managed, used, or controlled by Frederick County, containing any of the following search phrases:
>
> > "enhanced mitigation of negative environmental impacts"
> >
> > "high-quality design elements"
> >
> > "sectors of biological sciences and technology services"

"existing biological and information technology hub" or

"critical digital infrastructure[.]"

(Bolding omitted). In the second request, Sugarloaf asserted that the search terms "are all present in or related to specific textual changes made to the draft Sugarloaf Treasured Landscape Management Plan in or around early March 2021" and again stated that the changes to the draft plan were of public interest and import.

On the same day that the requests were submitted, Mr. Winkler received two automated and two non-automated emails from Mr. Ford, each relating to a different one of the MPIA requests, which confirmed that Sugarloaf's MPIA requests had been received.

The County failed to produce the requested records within 30 days of receiving Sugarloaf's MPIA applications, even though GP § 4-203(a)(1) provides that the custodian of records "shall grant or deny the application promptly, but not more than 30 days after receiving the application."

**Complaint and Answer**

On June 24, 2022, Sugarloaf filed a complaint against the County and Mr. Ford alleging that the public records it sought under the MPIA had been wrongfully withheld. Sugarloaf alleged that, although it had made the two MPIA requests on October 19, 2021, and the County had assigned the requests tracking numbers, "[t]o date, no records ha[d] been provided to" Sugarloaf, "either to its then-President Winkler, or to his successor, current President Mr. Stephen Black, in disregard of" the County's and Mr. Ford's "legal obligations pursuant to the MPIA." Sugarloaf brought two counts against both the County

- 9 -

and Mr. Ford for violation of the MPIA, one for each records request. In each count, Sugarloaf alleged that the County and Mr. Ford received the MPIA applications on October 19, 2021, and were "required, by law, to produce the records not later than November 18, 2021[,]" *i.e.*, within 30 days, and that the County and Mr. Ford violated the MPIA in failing "to respond as required and fail[ing] to permit inspection of responsive public records."

Sugarloaf alleged that the County and Mr. Ford had "failed to assert any privilege, confidentiality provision, or MPIA disclosure exception in support of [its] denial, because no such exception exists" and that the County and Mr. Ford had "failed to petition the Court for an order to continue the denial as required by [GP] § 4-362(d)(2)." Sugarloaf alleged that the County and Mr. Ford had failed to comply with the MPIA and were liable to Sugarloaf "for statutory damages, attorney's fees, and other costs of litigation." Sugarloaf requested injunctive relief, "including an order to produce the requested public records."[6]

On August 12, 2022, the County filed an answer, generally denying the allegations of the complaint and asserting various affirmative defenses.

**Motions for Summary Judgment**

On August 12, 2022, the same day the County's answer was filed, Sugarloaf filed a motion for summary judgment. Four days later, on August 16, 2022, counsel for the

---

[6]Sugarloaf named Mr. Ford as a defendant as to both counts and alleged that Mr. Ford, "acting for [the] County and himself, knowingly, willfully, and wrongfully denied inspection of a public record to" Sugarloaf. The circuit court ultimately dismissed Mr. Ford as a defendant in the case, finding that Mr. Ford's actions were "regrettable" and "disappointing," but that they did not rise to the level of being knowing and willful so as to warrant damages under GP § 4-362(d). Sugarloaf did not challenge the circuit court's judgment on that point before the Appellate Court and Mr. Ford was not a party to the appeal in that Court.

County sent to Sugarloaf's counsel 20 documents in response to the MPIA requests, along with "Vaughn indices" identifying the 20 documents that were provided and an additional 136 documents that were withheld, which the County claimed were exempt from disclosure under various privileges and exemptions under the MPIA.[7]

On September 12, 2022, the County filed a cross-motion for summary judgment. In a memorandum of law in support of the cross-motion and in opposition to Sugarloaf's motion for summary judgment, the County contended that Sugarloaf had "been provided a response to its [M]PIA requests and any delay in responding was unintentional." The County asserted that its response to the MPIA requests "was provided free-of-charge" and "was inadvertently delayed due to administrative oversight." The County maintained that, because Sugarloaf had been provided with the requested documents, the matter was moot.

On November 2, 2022, the circuit court held a hearing on the motions for summary judgment. At the hearing, Sugarloaf contended that the County's nondisclosure of the requested records constituted "discretionary denials[,]" and that the County was required to make a particularized showing that the denials were in the public's best interest, rather than just withhold documents "on the basis of [] blanket privilege."

---

[7]A "Vaughn index" is "a list of documents in the government's possession, setting forth the date, author, general subject matter, and claim of privilege for each document claimed to be exempt from disclosure[,]" and it derives its name from Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). Glass v. Anne Arundel County, 453 Md. 201, 213 n.11, 160 A.3d 658, 665 n.11 (2017) (citation modified). In Lamson v. Montgomery County, 460 Md. 349, 367, 190 A.3d 316, 327 (2018), we stated that a Vaughn index "has also been described as a system of itemizing and indexing that correlates each of the government's justifications for its refusal to disclose the documents with the actual portions of the documents at issue." (Citation modified).

The County contended that, although its response to the MPIA requests was "unintentionally untimely," it was otherwise "complete and adequate." The County asserted that, because it had responded to the MPIA requests and provided Vaughn indices, if Sugarloaf disagreed with the reasons as to why documents were withheld, Sugarloaf was required to advise the County of "the specific records, the specific reasons and disagreements." According to the County, if an impasse was reached, Sugarloaf could ask the circuit court for an *in camera* review.

After hearing argument on the motions, the circuit court proposed ordering Sugarloaf to file exceptions to the Vaughn indices and for the County to respond. Sugarloaf opposed the proposal, contending that, under the MPIA, the County had "one chance" to respond and justify withholding documents and that the County should not be given another opportunity "to think of another reason" for not disclosing documents. After taking a recess, the circuit court denied the parties' motions for summary judgment.

On January 26, 2023, the County filed a renewed motion for summary judgment and an accompanying memorandum in support, repeating in large part the arguments it made in its earlier cross-motion for summary judgment. On February 24, 2023, the circuit court denied the motion.

**Bench Trial**

On April 11, 2023, the circuit court conducted a bench trial, with the parties agreeing that the County would present its case first. The County called Mr. Ford as its sole witness. Mr. Ford testified that, after receiving Sugarloaf's MPIA requests on October 19, 2021, he spoke with his boss, the County Attorney, about the requests, and the County Attorney

advised Mr. Ford that, on the same day, an entity named Stronghold[8] "had reached out to the County Executive to set a meeting to talk about the Sugarloaf plan." Mr. Ford testified that both he and the County Attorney thought that the two matters "were related" and he "operated on that assumption from the beginning[.]" Mr. Ford testified that the County Attorney later reported that the meeting between Stronghold and the County Executive, which occurred the following week, "had gone well, that [Stronghold] had had all [its] questions answered, and that [it] would be in touch if [it] needed anything else." According to Mr. Ford, the outcome of the meeting did not change anything for him, and he continued to work with the County's Interagency Information Services Division to respond to Sugarloaf's MPIA requests.

Mr. Ford testified that he learned that approximately 1,500 errors had been "generated because of the nature of the search" for responsive records, all of which "would have to be resolved one by one."[9] Mr. Ford testified as to what happened next:

> [A]t that point, I was becoming a little frustrated and disheartened that I was not going to be able to provide a response of how many records we had because I just didn't know the answer. And again, it was at that point that I felt like I didn't want to upset the apple cart. A meeting had gone well, they got, in my mind, the answers had all been given, and they'd be back in touch if they needed anything else. So that's where I made the mistake of simply not documenting anything back to Mr. Winkler [of Sugarloaf].

---

[8]In its pretrial statement, the County stated that "Stronghold Sugarloaf Mountain is a non-profit corporation which owns and operates the mountain property for the public's enjoyment and education in an appreciation of natural beauty." (Internal quotation marks omitted).

[9]In response to questions from the circuit court, Mr. Ford testified that he would have learned of the errors sometime in late October 2021, "within th[e] first 10 days after the request came in."

Mr. Ford testified that he and Sugarloaf did not have any further communication until Sugarloaf filed the lawsuit.[10]  Mr. Ford testified that, after the lawsuit was served, the County began assembling documents in response to the MPIA requests, but that he did not participate in assembling documents the County believed were responsive to the requests.

After the close of the County's case, Sugarloaf moved for judgment on the ground that the County had not met its burden of production because it had produced "no firsthand knowledge as to why documents were withheld[.]"  Sugarloaf asserted that Mr. Ford testified that he received the MPIA requests, that he was the proper recipient of such requests, that he gathered records, and that he then "intentionally disregarded the request[s]."  Sugarloaf contended that the County had not satisfied its burden to show "that any of the [MPIA] exemptions appl[ied]."  Sugarloaf argued:

> The description of the exemptions in the Vaughn Indices themselves are as conclusory as they got.  The reasons listed therein do not give any particularized information.  It's merely boilerplate.  And it's boilerplate on specific exemptions where you would have to say, no, this would harm the public because of X specific reason, not a general county employees deserve to communicate in private because that's not actually what the law is.

The circuit court denied Sugarloaf's motion, noting that the Vaughn indices had not yet been introduced into evidence and, as such, it was unable to review the County's reasons for withholding documents.

Sugarloaf called its president, Mr. Black, as its sole witness.  Mr. Black testified that he was affiliated with Sugarloaf in October 2021 when the MPIA requests were

---

[10]Mr. Ford admitted that he had confused Sugarloaf and Stronghold and that he "thought one was related to the other."

submitted and that he was elected president of Sugarloaf in December 2021.  Mr. Black testified that, after Sugarloaf submitted the MPIA requests, it received two confirmation emails that the requests had been received, and two automated replies, indicating that the requests had been entered into the County's automated system.  Mr. Black testified that the County did not provide documents or otherwise communicate with Sugarloaf until after Sugarloaf filed its lawsuit.  Mr. Black testified that the documents Sugarloaf received from the County, after filing suit, were not all of the documents that had been requested.

After closing argument, the circuit court took the matter under advisement, and the bench trial concluded.

### The Circuit Court's Ruling

On June 8, 2023, the circuit court reconvened to deliver an oral ruling.  The circuit court made findings based on the evidence presented at the bench trial.  The circuit court noted that, although there was "little or no actual testimony" concerning the events that caused Sugarloaf to submit MPIA requests, what it gleaned from the record is that Sugarloaf believed "there've been secret meetings among county officials and representatives of Amazon web services, to carve out a large parcel of land from the so-called Sugarloaf plan, for rezoning and/or development."  The circuit court determined that the actions of Mr. Ford, which "resulted in the effective denial of [Sugarloaf's] request[,] were not knowing and willful."

The circuit court rejected the County's argument that Sugarloaf "was required to amend its complaint to reflect the fact that it was dissatisfied with non-production of certain records and/or the content of the Vaughn indices."  Noting that the County chose to use

- 15 -

Vaughn indices to satisfy the burden of providing a valid reason for non-production of the requested items, the circuit court ruled that the County had not met the burden of persuading the court that disclosure would be contrary to the public interest:

> In determining whether the chosen method is adequate . . . the Court is required to consider judicial economy, the conclusory nature of any agency affidavits, bad faith on the part of the agency, disputes concerning the contents of the documents, whether the agency has proposed in camera inspection, and the strength of the public interest in disclosure, which the Court has considered here.
>
> * * *
>
> [W]hile the County's Vaughn indices provide some background information on preparation and distribution of the documents, in the Court's view they fail to provide sufficient information about the persons among whom they were circulated, whether the documents were indeed vital to any agency decisions that might have been under consideration, and perhaps most importantly, whether any factual material existed within those documents that could have been disclosed after sanitizing . . . the documents.

The circuit court ruled that it would "order production of all previously undisclosed documents" to Sugarloaf, subject to the following exception: "[W]ith regard to the items claimed to be subject to attorney-client privilege, and confidential commercial information privilege, the Court believes that an in-camera inspection should be made by it in order to make a responsible decision on those exemptions." The circuit court identified the items, "13 documents in all[,]" and stated that it would look at the documents and "determine whether or not they meet any of the exemptions[.]"[11]

Consistent with its oral ruling, on the same day, June 8, 2023, the circuit court issued

---

[11]The circuit court also stated that it wanted to hear from Sugarloaf's counsel on the issue of attorneys' fees. The parties conferred with the circuit court about a potential hearing date.

- 16 -

a written order directing the County to submit specified withheld documents for *in camera* review and to provide Sugarloaf with the remaining records.

On June 20, 2023, the County filed a motion for reconsideration, which the circuit court denied in a memorandum opinion and order issued on July 25, 2023.

**Sugarloaf's Petition for Attorneys' Fees**

On August 10, 2023, Sugarloaf filed a petition for attorneys' fees, costs, and expenses, seeking $48,813.62. Sugarloaf contended that it was entitled to an award of attorneys' fees, costs, and expenses under the MPIA, specifically GP § 4-362(f), stating:

> Sugarloaf substantially prevailed in this action, the public derived significant benefit from Sugarloaf's successful MPIA action, Sugarloaf, itself, derived no commercial or personal benefit from this action other than serving the public interest, and . . . the County['s] withholding of the requested documents did not have a reasonable basis in law but, rather, was motivated by the desire to avoid the scrutiny that disclosure to the public of the documents sought and obtained by Sugarloaf would cause.

On August 28, 2023, the County filed an opposition to the petition, arguing that, "[a]bsent any evidence that prosecution of this suit was necessary for [Sugarloaf] to receive the records it initially requested, it cannot be said that [Sugarloaf] substantially prevailed in this matter."

On September 6, 2023, the circuit court held a hearing to rule on the *in camera* materials it had reviewed after the bench trial and to hear argument on the petition for attorneys' fees. As to the documents, which were "15 documents or sets of documents," the circuit court ruled that 14 were properly withheld and that it would not order

disclosure.[12]  The circuit court noted, though, that it appeared that the County had already provided several of the documents to Sugarloaf.

Next, the circuit court turned to the issue of attorneys' fees.  In support of the petition, Sugarloaf called Mr. Black as its sole witness.  Mr. Black testified that the Sugarloaf plan "is a zoning and planning process" and that, during the crafting of the plan, there had been a "'mysterious' change" "to redraw the boundaries of this plan area to remove a chunk of ground off . . . what is the eastern side of Sugarloaf Mountain to the west of . . . I-270."  Mr. Black testified that one of the purposes for Sugarloaf's MPIA requests "was to try to understand why this change was made in the draft plan[,]" which he characterized as trying "to uncover the details of this, at that point, secret Amazon project."  According to Mr. Black, he later learned that the reason that the Sugarloaf plan was modified was indeed "because the County was trying to carve out ground from the Sugarloaf region for heavy industrial development[,]" in particular, an "Amazon development project[,]" "without informing any of the citizens about it, without engaging in any public comment or public dialogue."

Mr. Black testified that the records Sugarloaf received as a result of the circuit court's decisions were "a sea change in [Sugarloaf's] understanding of those secret efforts . . . on a number of different aspects."  When asked about the value of the documents, Mr. Black testified:

> [A]s a direct result of the released documents, we now have a very accurate understanding of the sites and the parts of Southern Frederick County that

---

[12]As to the fifteenth document, at the end of the hearing, counsel for the parties agreed to confer about the document and "figure it out."

were under consideration for this heavy industrial development that are currently agricultural. We understand the depth of county staff's involvement in repeated meetings in drafting . . . ordinances. We understand now the concept of the critical digital infrastructure floating zone as the mechanism that was going to be used to implant these industrial facilities into otherwise very rural areas. We understand the time lines that this was all supposed to occur on. We understand now from these documents that public involvement, public comment, public participation was going to be . . . explicitly pushed to the side in favor of this project through no matter what the opposition was. I think all of these things we would not have known were it not for these released records.

Mr. Black testified that, although he thought "Amazon may have moved on, [] the data center industry is still very interested in ground in Frederick County[,]" and the documents that Sugarloaf obtained were "useful to inoculate the system, the government and the citizenry, . . . against that same kind of action being taken by some other entity . . . in the immediate future."[13]

On redirect, Mr. Black testified that the records that were released in August 2022, during the initial disclosure, were "things like planning commission agendas and staff reports," "things that . . . you can get on the internet. You don't have to ask for them." Mr. Black testified that it was the records that were released after the circuit court's decisions that "made an enormous increase in our understanding."

After hearing argument from counsel for the parties, the circuit court took the matter of attorneys' fees under advisement.[14]

---

[13]On cross-examination, Mr. Black testified that the Sugarloaf plan had "been enacted with a return to the original boundary that did not have the land removed for the Amazon project."

[14]On September 8, 2023, Sugarloaf filed a supplemental petition for attorneys' fees, seeking an additional $6,648. Sugarloaf asserted that the additional fees were due to the

**The Circuit Court's Ruling on the Petition and Award of Attorneys' Fees**

On September 28, 2023, the circuit court issued a written "Opinion and Order Regarding Attorneys' Fees," awarding Sugarloaf attorneys' fees in the amount of $25,000. The opinion and order consisted of six full single-lined pages with sections having the following headings, "Background and Factual Findings," "Statutory and Case Law Relevant to Attorneys' Fees Entitlement," "Plaintiff's Request for Attorneys' Fees," "Defendant's Opposition," "Analysis," and "Award of Attorneys' Fees," and a seventh page with two lines stating that the County was ordered to pay Sugarloaf "the sum of $25,000.00 as attorneys' fees, within 30 days of docketing of this order." (Bolding and some capitalization omitted). In the statutory and case law section, the circuit court explained that, under GP § 4-362(f), after a lawsuit, if an MPIA "complainant has substantially prevailed, the court may assess against a defendant governmental unit reasonable counsel fees and other litigation costs that the complainant reasonably incurred." The circuit court noted that, in Kline v. Fuller, 64 Md. App. 375, 496 A.2d 325 (1985), the Appellate Court set forth a non-exhaustive list of factors for a court to consider in determining an award of attorneys' fees, including: (1) the benefit to the public derived from the suit; (2) the nature of the complainant's interest in the released information; and (3) whether the agency's withholding of the information had a reasonable basis in law.

In the section of the opinion and order labeled "Analysis," the circuit court

following: (1) preparation for and attendance at the September 6, 2023 hearing; (2) preparation and filing of the original petition for attorneys' fees; and (3) "other matters, performed on August 9 and 10, 2023, but which had not yet been invoiced as of the filing of the original [p]etition[.]"

- 20 -

determined that "the filing of this lawsuit was necessary to obtain the documents sought[,]"

and explained:

> [T]he court does not believe that if [Sugarloaf] had brought the matter to the attention of the [C]ounty prior to filing suit such action would have resulted in production of the records sought.  No reason has been advanced to suggest that those records ordered to be produced on June 8 would have been produced without protracted struggle.  If that were the case, the [C]ounty would have produced them when suit was filed.  This is especially so in light of the court's review, above, of the content of certain key documents.[15]  Nor does the court believe those documents would have been revealed after rezoning had occurred, absent further pursuit by citizen requestors.

The circuit court concluded that "[k]ey documents" produced "were of legitimate public

interest, and did not personally benefit" Sugarloaf.  The circuit court stated that there was

"significant public benefit to the disclosure of these documents."

The circuit court determined that GP § 4-362(f), the section of the statute under

which Sugarloaf sought attorneys' fees, "exists independently of its companion subsection

(d)(1)-(3), which requires a finding of knowledge and willfulness before 'damages' –

including attorneys' fees – can be awarded."  The circuit court concluded that the filing of

the lawsuit was necessary and that, "in its discretion and for the reasons stated[,]" it found

that Sugarloaf was "entitled to recovery of reasonable attorneys' fees."

The circuit court's determination of the amount of the attorneys' fees award

consisted of the following three paragraphs on the last full page of the opinion, under the

section titled "Award of Attorneys' Fees":

> The court took testimony on September 6 regarding the amount and

---

[15]The circuit court stated that "the documents that were produced after the court's order [of] June 8 strongly suggest that potential embarrassment to [C]ounty officials could have motivated the reluctance to disclose them."

reasonableness of [Sugarloaf's] attorneys' fees, totaling $48,813.62. Using the lodestar method, and considering the factors set forth in the applicable Maryland Rules of Procedure, the court finds the fees to be customary and reasonable. The time and labor required were extensive, and the services were performed skillfully. The number of hours expended and the hourly fees were also reasonable, and the results obtained by [Sugarloaf] were favorable.

At the same time, there were 14 documents that were justifiably withheld by [the County] on the grounds of either attorney-client or confidential commercial information privilege. Unfortunately, some of those documents have already been produced because the [C]ounty in its *Vaughn* indices also sought to withhold them based upon the assertion of discretionary privileges which were not accepted by the court.

The court has the discretion to award attorneys' fees in an amount that it believes appropriate. It has taken into account that a substantial portion of the documents produced were drafts, cover emails, and redundant in nature. It also ascribes no evil motive to [C]ounty officials, some of whom were uncomfortably caught in the middle of an attempt to land a large national corporation who might enhance the [C]ounty's stature and add to its tax base, while maintaining the confidentiality [Amazon Web Services] required. Unfortunately for the [C]ounty, during this quest, some county citizens questioned the transparency of the process and ultimately acquired important information that was of interest to the public. As the [C]ounty has pointed out in its submission, ultimately – and unfortunately [–] the citizens of Frederick County will bear the burden of an award of attorneys' fees, an irony that is not lost on the court.

After this, the circuit court stated, "[t]aking all of these factors into consideration," it was

"ORDERED, that Defendant Frederick County shall pay to Plaintiff the sum of $25,000.00

as attorneys' fees, within 30 days of docketing of this order." (Bolding omitted).[16]

On October 18, 2023, Sugarloaf noted an appeal to the Appellate Court of Maryland,

and on October 27, 2023, the County noted a cross-appeal.

---

[16]In a separate order issued the same day, September 28, 2023, the circuit court denied Sugarloaf's supplemental petition, with the notation: "This request should have been presented at the 9/6/23 hearing."

**Opinion of the Appellate Court of Maryland**

On May 1, 2025, the Appellate Court of Maryland affirmed the circuit court's judgment awarding $25,000 in attorneys' fees. See Sugarloaf All., Inc., 265 Md. App. at 244, 334 A.3d at 1177.[17] The Appellate Court held that the circuit court did not arbitrarily exercise its discretion or clearly err "in adjusting the lodestar amount downward." Id. at 244, 334 A.3d at 1177. The Appellate Court concluded that the circuit court's determination that the County properly withheld 14 documents as privileged "was relevant in assessing Sugarloaf's degree of success in obtaining the injunctive relief it sought (to

---

[17]In the Appellate Court, the County raised five issues:

I.     Did the Circuit Court abuse its discretion by allowing Sugarloaf Alliance to proceed on its unpleaded and unparticularized challenge to the County's record production and indices?

II.    Did the Circuit Court err in finding that the County failed to meet its burden of justifying its "discretionary" denials of responsive records?

III.   Did the Circuit Court abuse its discretion by ordering that the County produce all records not withheld on the basis of attorney-client privilege or confidential commercial privilege without conducting an *in camera* review or allowing for supplementation of the Vaughn indices?

IV.    Did the Circuit Court err in finding that Sugarloaf Alliance substantially prevailed in this litigation?

V.     Did the Circuit Court properly conclude that Sugarloaf Alliance was not entitled to all of the attorneys' fees sought?

The Appellate Court consolidated the five issues into the following issue: "Did the circuit court err in determining that Sugarloaf had 'substantially prevailed' in its suit and therefore was eligible for an attorneys' fees award under the MPIA?" Sugarloaf All., Inc., 265 Md. App. at 204, 334 A.3d at 1153. On that issue, the Appellate Court concluded: "If the County wished to contest the court's order to produce the records at issue, it could have noted an appeal from that judgment and sought a stay. Instead, it produced promptly the documents, thereby mooting any appellate challenge and cementing ultimately Sugarloaf's status as a substantially prevailing party." Id. at 234, 334 A.3d at 1170-71.

wit, an order compelling the County to produce the records responsive to its MPIA request).” Id. at 241, 334 A.3d at 1175 (citation modified). The Appellate Court determined that the circuit court properly considered that a substantial portion of the documents produced were drafts, cover emails, and redundant, explaining: “[W]hether a complainant recovers key documents is a binary determination essential only to whether one is eligible for an award of attorneys’ fees. Gauging a party’s degree of success, by contrast, requires a more nuanced comparison of the success attained to the relief sought.” Id. at 241, 334 A.3d at 1175 (citation modified).

The Appellate Court rejected Sugarloaf’s contention “that the circuit court erred” in considering the absence of an evil motive on the part of County officials, noting that in addition to seeking an award of attorneys’ fees under GP § 4-362(f), in its complaint Sugarloaf also included a claim for actual and statutory damages under GP § 4-362(d), so “the absence of evidence that the County violated knowingly and willfully the MPIA was fatal to Sugarloaf’s damages claim[, but] it was relevant, albeit indirectly, to its level of success in the litigation.” Id. at 242-43, 334 A.3d at 1176. Although the Appellate Court agreed with Sugarloaf that the source of funds used to pay an attorneys’ fees award “is irrelevant to the degree of success obtained by a plaintiff” or any other applicable factor, it characterized the circuit court’s mention of the citizens of the County paying the award as a “passing reference[,]” which it did “not perceive” as having “informed [the circuit court’s] downward adjustment of the lodestar amount.” Id. at 244, 334 A.3d at 1176-77.

In contrast, the Appellate Court held that the circuit court “abused its discretion by denying the supplemental petition based exclusively on Sugarloaf’s failure to raise it at the

September 6 hearing on the original petition" because, "[i]n doing so, the court failed to consider the requisite factors[.]" Id. at 247, 334 A.3d at 1178. The Appellate Court vacated the denial of Sugarloaf's supplemental petition for attorneys' fees and remanded the case for reconsideration of the supplemental petition. See id. at 247, 334 A.3d at 1178.

## Petition for a Writ of *Certiorari*

On June 18, 2025, Sugarloaf petitioned for a writ of *certiorari*, raising the following issue:

> Whether a court abuses its discretion by reducing a prevailing plaintiff's reasonable attorneys' fees for reasons inconsistent with the purposes of the MPIA[.]

On September 19, 2025, we granted the petition. See Sugarloaf All., Inc., 492 Md. 410, 344 A.3d 675.

## DISCUSSION

## The Parties' Contentions

Sugarloaf contends that, although the circuit court correctly determined that it was entitled to attorneys' fees and correctly applied the lodestar approach in determining the initial amount of the attorneys' fees award, the circuit court abused its discretion by cutting the award in half for reasons that are inconsistent with the MPIA. Sugarloaf argues that instead of applying Maryland Rules, the circuit court apparently developed its own considerations in reducing the attorneys' fees award and improperly considered, contrary to the purpose of the MPIA, that: (1) 14 documents were justifiably withheld; (2) a substantial portion of the documents produced were drafts or cover emails and were redundant in nature; (3) there was no evil motive on the part of County officials; and (4)

- 25 -

the citizens of the County would bear the burden of the attorneys' fees award.

The County responds that, in reducing the award of attorneys' fees, the circuit court was permitted to consider the results that Sugarloaf obtained and thus did not abuse its discretion in considering that the County properly withheld some documents and that a substantial portion of the produced documents were drafts, cover emails, and redundant in nature. The County also asserts that the circuit court properly considered that County officials did not have an evil motive because there was no knowing and willful violation of the MPIA. The County maintains that the circuit court's reference to the financial burden on the citizens of the County was a passing reference, acknowledging the reality that an award of attorneys' fees would be paid out of the public coffers.

**Standard of Review**

"Generally, the decision whether to award counsel fees to an eligible party under the MPIA rests within the sound exercise of discretion by the trial judge." Caffrey v. Dep't of Liquor Control for Montgomery Cnty., 370 Md. 272, 289, 805 A.2d 268, 278 (2002) (citations omitted). "The standard that a trial court applies in evaluating whether to award attorneys' fees and costs is a legal decision; the conclusion that the court arrives at after applying that standard to the facts of the particular case is an exercise of discretion." Ocean City, Md., Chamber of Com., Inc. v. Barufaldi, 434 Md. 381, 391, 75 A.3d 952, 958 (2013) (citing Wilson-X v. Dep't of Human Res., 403 Md. 667, 675, 944 A.2d 509, 514 (2008)). "[A]bsent a showing of abuse of that discretion or a predicate erroneous legal conclusion, the determination to award or deny such fees generally will not be disturbed on appeal." Caffrey, 370 Md. at 290, 805 A.2d at 278.

An abuse of discretion "occurs where no reasonable person would take the view adopted by the trial court, or when the court acts without reference to any guiding rules or principles." Dabbs v. Anne Arundel County, 458 Md. 331, 347, 182 A.3d 798, 807 (2018) (citation modified). An appellate court "will find an abuse of discretion when the ruling is clearly against the logic and effect of facts and inferences before the court, . . . when the ruling is violative of fact and logic, or when it constitutes an untenable judicial act that defies reason and works an injustice." Id. at 347, 182 A.3d at 807 (citation modified).

**Relevant Law**

As explained above, under the MPIA, "[i]f the court determines that the complainant has substantially prevailed, the court may assess against a defendant governmental unit reasonable counsel fees and other litigation costs that the complainant reasonably incurred." GP § 4-362(f). Where a court "determines that the complainant has substantially prevailed, that litigant becomes eligible but not entitled to an award of reasonable attorney fees and costs." Caffrey, 370 Md. at 299, 805 A.2d at 284 (citation modified). As we explained in Caffrey, id. at 299, 805 A.2d at 284, with respect to the MPIA:

> [A]lthough an actual judgment in claimant's favor is not required to meet the threshold of substantial prevailance, it must be demonstrated that prosecution of the lawsuit could reasonably be regarded as having been necessary in order to gain release of the information, that there was a causal nexus between the prosecution of the suit and the agency's surrender of the requested information, and that the complainant recovered key documents. Then, once the court determines that the complainant has substantially prevailed, that litigant becomes eligible but not entitled to an award of reasonable attorney fees and costs.

(Citation modified).

- 27 -

"Generally, the decision whether to award counsel fees to an eligible party under the MPIA rests within the sound exercise of discretion by the trial judge." Id. at 289, 805 A.2d at 278 (citations omitted); see also Kline, 64 Md. App. at 388, 496 A.2d at 332 ("A decision on whether to award counsel fees to an eligible party resides in the discretion of the trial judge."). Our case law and Rules instruct how a court must apply its discretion. Simply put, in determining whether to award attorneys' fees, the court's discretion is constrained by standards outlined in our case law. We have set forth the following non-exhaustive list of factors that courts must consider when exercising that discretion: "(1) the benefit to the public, if any, derived from the suit; (2) the nature of the complainant's interest in the released information; and (3) whether the agency's withholding of the information had a reasonable basis in law." Stromberg Metal Works, Inc. v. Univ. of Md., 395 Md. 120, 128, 909 A.2d 663, 668 (2006) (citation modified); see also Caffrey, 370 Md. at 299, 805 A.2d at 284 (same); Kirwan v. Diamondback, 352 Md. 74, 96, 721 A.2d 196, 206-07 (1998) (same); Kline, 64 Md. App. at 386, 496 A.2d at 331 (same). Although not exclusive, these are "three important considerations in determining whether counsel fees should be awarded[.]" Kirwan, 352 Md. at 96, 721 A.2d at 206-07. If a court finds that a complainant is not only eligible for, but also entitled to, an award of attorneys' fees, the court must determine the appropriate amount of the award.

In actions under fee-shifting statutes, courts generally employ the "lodestar method" in calculating what attorneys' fees and costs are to be awarded. Monmouth, 416 Md. at 333-34, 7 A.3d at 5-6; see also Friolo v. Frankel, 373 Md. 501, 504-05, 819 A.2d 354, 356 (2003) ("[I]n actions under fee-shifting statutes, . . . the lodestar approach is ordinarily the

appropriate one to use in determining a reasonable counsel fee."). "The lodestar approach has public policy goals and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that other methods would provide inadequate compensation." E. Shore Title Co. v. Ochse, 453 Md. 303, 337, 160 A.3d 1238, 1258 (2017) (citation modified).

The starting point for determining a reasonable fee under the lodestar approach is to multiply "the number of hours reasonably expended on the litigation [] by a reasonable hourly rate." Friolo, 373 Md. at 523, 819 A.2d at 367 (citation modified). "This amount is then adjusted by the court, depending on the effect of numerous external factors bearing on the litigation as a whole." E. Shore Title Co., 453 Md. at 337, 160 A.3d at 1258 (citation modified). The factors the court must consider are set forth in Maryland Rule 2-703(f),[18] which provides, in pertinent part:

> (2) *If Award Permitted or Required*. . . . If the court determines that a permitted award should be made . . ., the court shall apply the standards set forth in subsection (f)(3) of this Rule and determine the amount of the award.
>
> (3) *Factors to Be Considered*.
>
>> (A) the time and labor required;
>>
>> (B) the novelty and difficulty of the questions;
>>
>> (C) the skill required to perform the legal service properly;
>>
>> (D) whether acceptance of the case precluded other employment by the attorney;
>>
>> (E) the customary fee for similar legal services;

---

[18]Maryland Rule 2-703(a) provides that the Rule "applies to claims for attorneys' fees allowable by law to a party in an action in a circuit court."

(F) whether the fee is fixed or contingent;

(G) any time limitations imposed by the client or the circumstances;

(H) the amount involved and the results obtained;

(I) the experience, reputation, and ability of the attorneys;

(J) the undesirability of the case;

(K) the nature and length of the professional relationship with the client; and

(L) awards in similar cases.[19]

Pursuant to Maryland Rule 2-703(g), the circuit court "shall state on the record or in a memorandum filed in the record the basis for its grant or denial of an award." We have explained that Maryland Rule 2-703(g) "is necessary because it is otherwise impossible for an appellate court to review the reasons for the denial." Lockett v. Blue Ocean Bristol, LLC, 446 Md. 397, 426, 132 A.3d 257, 273 (2016) (citations omitted). In addition, we have held that "a trial court commits legal error if it considers the wrong factors when deciding whether to award attorneys' fees" and have stated that "there must be sufficient information in the record to enable a reviewing court to follow the reasoning of the trial court[.]" Id. at 426, 132 A.3d at 273 (citation modified).

**Analysis**

Here, in the written opinion and order awarding $25,000 in attorneys' fees to

---

[19]The Committee note for Maryland Rule 2-703(f)(3), citing Monmouth Meadows Homeowners Ass'n, Inc., 416 Md. at 333-34, 7 A.3d at 6, states: "The factors listed in subsection (f)(3) of this Rule have been approved by the Supreme Court in statutory fee-shifting cases, where the 'lodestar method' is applied in determining an award."

Sugarloaf, after determining that Sugarloaf was entitled to an award, although the circuit court purported to apply the lodestar approach and factors set forth in the Maryland Rules, the court considered factors not set forth in Maryland Rule 2-703(f)(3) and, without sufficient information in the record for us to follow its reasoning, adjusted the amount of the attorneys' fee award downward from $48,813.62 to $25,000.

In the last three paragraphs of its opinion, in the section labeled "Award of Attorneys' Fees," the circuit court determined the attorneys' fee award. In this section, the circuit court considered circumstances that are not relevant or appropriate factors for determining the amount of an attorneys' fee award, without providing a clear explanation of how it determined the amount to be awarded, or even mentioning an amount other than the $48,813.62 requested by Sugarloaf. In the ordered paragraph on the last page of the opinion, the circuit court ordered that the County pay Sugarloaf $25,000 in attorneys' fees, without having provided a reasonable explanation for its determination. Under these circumstances, we reverse the Appellate Court's judgment affirming the award of $25,000 in attorneys' fees and remand the case to that Court with instructions to vacate the circuit court's award and to remand the case to the circuit court for it to reconsider the petition for attorneys' fees.

In reaching this decision, we review the circuit court's opinion to ascertain whether the circuit court employed the correct legal standard in reaching its decision and whether it abused its discretion in applying that standard to the facts of the case. See Wilson-X, 403 Md. at 675, 944 A.2d at 514 ("[T]rial judges do not have discretion to apply inappropriate legal standards, even when making decisions that are regarded as

discretionary in nature.").

From the first paragraph of the section of the opinion labeled "Award of Attorneys' Fees," it would appear that the circuit court had decided that Sugarloaf was entitled to an attorneys' fee award and intended to award Sugarloaf the amount it requested in attorneys' fees, $48,813.62. In the first paragraph, the circuit court stated that it heard testimony concerning the amount and reasonableness of Sugarloaf's attorneys' fees, which totaled $48,813.62, and that, using the lodestar approach and considering the factors "set forth in the applicable Maryland Rules of Procedure"—presumably referring to Maryland Rule 2-703(f)(3)—it found "the fees to be customary and reasonable." The circuit court found that "[t]he time and labor required were extensive, and the services were performed skillfully." The circuit court explained that "[t]he number of hours expended and the hourly fees were also reasonable, and the results obtained by [Sugarloaf] were favorable."

These factors appear to correspond with those set forth in Maryland Rule 2-703(f)(3)(A), (C), and (H), and there is no indication that the circuit court determined that any of the circumstances it discussed counted against Sugarloaf's request. To the contrary, the circuit court's discussion of the factors that corresponded with Maryland Rule 2-703(f)(3)(A), (C), and (H) appeared to inure to Sugarloaf's benefit. From these findings and the circuit court's mention of the lodestar approach and applicable factors, along with the circumstance that, at this point, the circuit court had mentioned nothing on the negative side of the ledger with respect to an award of attorneys' fees, it appears that the circuit court was headed in the direction of awarding the full amount of fees requested by Sugarloaf.

This brings us to Sugarloaf's contention that, after initially appropriately deploying the lodestar approach, the circuit court considered four factors that are not set forth in Maryland Rule 2-703(f)(3) and that are not appropriate for consideration in determining an attorneys' fee award in an MPIA case. First, the circuit court stated that "[a]t the same time" as the circumstances previously discussed, there were 14 documents that "were justifiably withheld" by the County based on privilege but that, unfortunately, some of the documents were disclosed. Second, the circuit court stated that it took "into account that a substantial portion of the documents produced were drafts, cover emails, and redundant in nature." Third, the circuit court stated that it "ascribe[d] no evil motive to [C]ounty officials, some of whom were uncomfortably caught in the middle of an attempt to land a large national corporation who might enhance the [C]ounty's stature and add to its tax base, while maintaining the confidentiality [Amazon Web Services] required." Fourth, the circuit court stated that, "[a]s the County pointed out in its submission, ultimately – and unfortunately [–] the citizens of Frederick County will bear the burden of an award of attorneys' fees, an irony that is not lost on the court."

With respect to the first factor, we see nothing inherently unacceptable about the circuit court considering that not all of the documents responsive to Sugarloaf's requests were ordered to be produced. That factor seems to relate to "the results obtained," which is appropriately considered under Maryland Rule 2-703(f)(3)(H). However, we caution that ordinarily the results obtained in an MPIA lawsuit will not best be assessed based purely on the number of documents or pages of records obtained as compared to the number sought. Instead, a court should consider the significance of the information that was

- 33 -

obtained.  A requester who receives significant information sought in documents that are produced has obtained excellent results, regardless of whether other documents were properly withheld.  Relatedly, a requester who obtains documents, but only documents that lack any useful or new information, has obtained poor results.

In addition, the circuit court did not indicate one way or another whether the circumstance that 14 of the 136 documents at issue were justifiably withheld was a factor that affected its determination of the attorneys' fee award.  However, after saying that 14 of the documents were justifiably withheld, the circuit court's discussion took a different turn.  The circuit court stated that it had "the discretion to award attorneys' fees in an amount that it believes appropriate[,]" and proceeded to discuss the second, third, and fourth factors that Sugarloaf contends are objectionable.  Stated otherwise, at this point, the circuit court explained that it would exercise its discretion to award the attorneys' fees it deemed appropriate and next discussed the factors that it considered.

The circuit court expressly stated that it had "taken into account that a substantial portion of the documents produced were drafts, cover emails, and redundant in nature." There can be no dispute that redundancies in the documents produced is a factor that the circuit court considered in determining the attorney's fee award.  One possible theory for the circuit court considering that some of the documents produced were redundant is that, as the County argues, the court viewed the production of redundant documents as a factor to be considered under Maryland Rule 2-703(f)(3)(H), as relevant to the nature of the results obtained by the prevailing party.  However, this would be only a guess.  And even if that were so, the circuit court did not identify how the production of drafts, cover emails,

and redundant documents impacted "the results obtained." As observed above, the focus of an inquiry into the results obtained should be on the information received. The inclusion of documents or pages of little value in a production set does not reduce the value of other documents or pages in that set. Moreover, the court's reference does not identify why the inclusion of drafts, cover emails, and redundant documents should be counted against Sugarloaf in this analysis. The County, not Sugarloaf, knew the content—or absence of content—of the documents, and yet it still fought to withhold them, and lost. Finally, although the circuit court stated that it had taken the circumstance into account, the court did not explain whether or how the production of redundant documents had resulted in an adjustment of the award of attorneys' fees and, if redundancies in the documents had been a factor that led to a reduction in the amount awarded, the nature of any adjustment that may have been warranted.

More troubling are the circuit court's statements about the lack of evil motive on the part of the County and the citizens of the County bearing the burden of an attorneys' fee award. These statements give the impression that, despite having determined the requested attorneys' fees to be customary and reasonable, the circuit court made an adjustment to the award because it had not assigned an evil motive to the County and did not want the citizens of the County to have to pay a large award. Neither of the considerations is listed as a factor in Maryland Rule 2-703(f)(3) or reasonably encompassed within one of these factors, and both, on their face, are not relevant factors to be considered in assessing an attorneys' fee award under the lodestar approach in an MPIA case. See Stromberg, 395 Md. at 133, 909 A.2d at 671 (The purpose of fee-shifting

under the MPIA is to remove the frequent "barriers presented by court costs and attorneys' fees [that] are insurmountable for the average person requesting information, allowing the government to escape compliance with the law." (Citation modified)).

Allowing a court to consider whether a government agency had an evil motive in failing to respond to a request for records or that citizens of the County, *i.e.*, taxpayers, will shoulder the burden of an attorneys' fee award as factors that support an adjustment of a fee award in an MPIA case would impermissibly raise the burden of proof required of a substantially prevailing party seeking an award of attorneys' fees. If such factors were valid considerations in determining an attorneys' fee award in an MPIA case, to avoid a potential downward adjustment of an award, a substantially prevailing party would be required to prove that the government had a bad or evil motive in withholding documents or that taxpayers would not be burdened by an award.

Theoretically, the circuit court's statement that it ascribed no evil motive to the County is possibly susceptible to different interpretations. Anything is possible. It could be argued that the circuit court's statement can be interpreted as the court stating in the abstract that it would not ascribe an evil motive to the County—*i.e.*, that it would put aside consideration of the County having an evil motive. However, the reading most supported by the statement's text and the discussion leading up to it is that the circuit court determined that County officials did not have an evil motive because, as it explained, the officials were caught in the middle of a complicated situation, and this was a factor that the court considered in exercising "the discretion to award attorneys' fees in an amount that it believe[d] appropriate."

The County argues that, in discussing the award of attorneys' fees, the circuit court's statement that it ascribed no evil motive to County officials was a reference to its finding that Mr. Ford did not knowingly and willfully withhold documents and that Sugarloaf had not prevailed on its request for statutory and actual damages under GP § 4-362(d). In other words, it could be argued that, by stating that it would ascribe no evil motive to the County, the circuit court attempted to communicate that Sugarloaf was not entitled to the full $48,813.62 requested because there had been no knowing and willful misconduct by Mr. Ford and Mr. Ford had been dismissed as a defendant, meaning that Sugarloaf was not eligible for statutory damages or attorneys' fees with respect to that aspect of its complaint.

But, if that were the case, the circuit court did not say as much. The circuit court stated that it would ascribe no evil motive to County officials, "some of whom were uncomfortably caught in the middle of an attempt to land a large national corporation who might enhance the [C]ounty's stature and add to its tax base, while maintaining the confidentiality [Amazon Web Services] required." With this remark, the circuit court appeared to provide an explanation for the failure of County officials, other than Mr. Ford, to timely respond to Sugarloaf's MPIA requests, which amounted, in its view, to the County not having an evil motive. The circuit court referred to "County officials" and that "some" of them were caught in the middle, indicating that it was referring to the conduct of multiple officials not responding to the MPIA request. Had the circuit court intended to

refer to the complaint having been dismissed against Mr. Ford and that there was no knowledge and willfulness on Mr. Ford's part, it would presumably have said so.[20]

Based on the petition for attorneys' fees, affidavit from counsel, and accompanying invoices, which were attached to the affidavit as Exhibit 1, below is a chart listing the type of attorney or paraprofessional who worked, the number of hours worked, the hourly rate, and total amount of attorneys' fees and costs requested by Sugarloaf, which the circuit court found to be reasonable and customary.

---

[20]Moreover, having an evil motive is different than engaging in willful and knowing conduct. Typically, proof of an evil motive is associated with the standard of proof for punitive damages. Having an evil motive involves having a malicious, intentional desire to cause harm or injury that exceeds a person knowingly and willfully taking an action. Cf. Darcars Motors of Silver Spring, Inc. v. Borzym, 379 Md. 249, 264, 841 A.2d 828, 837 (2004) (In discussing punitive damages for intentional torts, which may be awarded only when a plaintiff has demonstrated by clear and convincing evidence that a defendant acted with actual malice, we stated that we have defined "actual malice as conduct of the defendant characterized by evil motive, intent to injure, ill will, or fraud." (Citation modified)); see also Schaefer v. Miller, 322 Md. 297, 300, 587 A.2d 491, 493 (1991) (In discussing punitive damages in a medical malpractice case, we stated that actual or express malice is "the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." (Citation modified)).

By contrast, under the MPIA, a defendant has acted knowingly and willfully where the defendant intentionally failed to disclose records that are not legally exempt from disclosure, i.e., that the complainant was entitled to inspect. See GP § 4-362(d)(1). The person must be aware that the withholding is contrary to the law and act with deliberate intent. See GP § 4-362(d)(1); see also Kim v. Md. State Bd. of Physicians, 423 Md. 523, 545-46, 32 A.3d 30, 42-43 (2011) (In discussing whether a doctor acted "willfully" by falsely indicating on a license renewal application that he was not involved in a medical malpractice action, we stated that "a willful act is committed voluntarily and intentionally, not necessarily with the intent to deceive[,]" and that "willful," for purposes of the statute at issue, required proof that the conduct was done intentionally, "not that it was committed with the intent to deceive or with malice." (Citation modified)); Knowingly, Merriam-Webster (2026), https://www.merriam-webster.com/dictionary/knowingly [https://perma.cc/Q5PE-SHWN] ("Knowingly" is defined as "in a knowing manner[,]" "especially: with awareness, deliberateness, or intention[.]").

| Person | Number of Hours Worked | Hourly Rate | Total Amount |
|---|---|---|---|
| Partner | 102.9 | $300 | $30,870.00 |
| Partner | 2.9 | $300 | $870.00 |
| Counsel | 1.4 | $300 | $420.00 |
| Counsel | 7 | $300 | $2,100.00 |
| Associate | 29 | $300 | $8,700.00 |
| SUBTOTAL: | 143.2 hours | | **$42,960.00** |
| | | | |
| Paraprofessional | 14.7 | $190 | $2,793.00 |
| Paraprofessional | 3.7 | $190 | $703.00 |
| SUBTOTAL: | 18.4 hours | | **$3,496.00** |
| | | | |
| EXPENSES: | | | **$2,455.62** |
| | | | |
| TOTAL: | | | **$48,911.62** |
| | | | |
| AMOUNT SOUGHT: | | | **$48,813.62 ($98 less)** |

We are not able to discern a demarcation or designation of hours that the circuit court would have been able to attribute solely to work on the request for statutory and actual damages due to Mr. Ford's conduct. In looking at the invoices, many of the line items are for activities such as "[t]elephone call with client[,]" drafting and revising various filings, "[r]eceive/review/reply emails from client[,]" and hearing and trial preparation that would apply to each of the two counts alleging a violation of the MPIA by both defendants. To be sure, there are a couple of line items that specifically mention Mr. Ford, such as drafting and filing a notice of service of deposition of Mr. Ford, logistics to set up the deposition of Mr. Ford, "[d]eposition of Andrew J. Ford; prepare for same[,]" and "[p]repare copies for use by Mr. Baldwin [Sugarloaf's lead counsel] in Deposition of Andrew Ford[,]" but there is no notation indicating that all, or even some, of the time spent

on deposing Mr. Ford, or preparing for the deposition, was related solely to the request for statutory and actual damages and not to the effort to obtain evidence in support of the two counts alleging a violation of the MPIA by the County, on which Sugarloaf substantially prevailed. Even taking into account that Mr. Ford was dismissed as a defendant, we do not discern a logical basis for adjusting the amount of attorneys' fees by half—from $48,813.62 to $25,000—due to the dismissal. And, the circuit court gave no indication that this was the basis for the adjustment. Without speculation or conjecture, there is no apparent rational basis for the adjustment of the $48,813.62 requested, which the circuit court described as reasonable, to the $25,000 awarded.

Insofar as the circuit court's statement that citizens of the County would bear the burden of the attorneys' fee award is concerned, the statement is clearly an improper consideration for determination of an attorneys' fee award in an MPIA case. We disagree with the Appellate Court's characterization of this as a "passing reference[.]" Sugarloaf All., Inc., 265 Md. App. at 244, 334 A.3d at 1176. The circuit court stated not only that the citizens would bear the burden of the award but also that this was "an irony that is not lost on the court" and that the County had pointed this out in "its submission[.]" These statements lead to the conclusion that the circuit court considered the alleged burden on citizens of the County as a factor in reducing the amount of the attorneys' fee award to $25,000.

In its opposition to the petition for attorneys' fees, the County argued that awarding attorneys' fees to Sugarloaf would be inequitable based on the facts of the case and that "[u]ndoubtedly, requiring the County—as well as taxpayers of the County—to undergo

such a financial burden based simply on an internal miscommunication is unsustainable and inequitable." In stating that the citizens of the County would bear the financial burden of the attorneys' fee award, the circuit court apparently adopted the argument made by the County—that awarding attorneys' fees to Sugarloaf would be inequitable as it would place a financial burden on the taxpayers of the County.[21]

Neither the General Assembly nor this Court has enacted a statute or Rule that directs a court to take into account an alleged financial burden on taxpayers when determining an award of attorneys' fees in an MPIA case. Neither GP § 4-362(f), which provides that "the court may assess against a defendant governmental unit reasonable counsel fees" where the court determines the complainant has substantially prevailed, nor Maryland Rule 2-703(f)(3), which sets forth the factors that are to be considered by a court where the lodestar method is applied in determining an attorneys' fee award, suggests, or requires, that a court should consider the source of payment of an award. Nor does our case law support that the source of payment of an award must be considered in an MPIA case.

With respect to attorneys' fee awards in MPIA cases, our case law recognizes the well-established principle that a court must consider "the benefit to the public, if any,

---

[21]It could also be argued that in stating that the citizens of the County will bear the burden of an award of attorneys' fees, the circuit court attempted to say that the citizens of the County who benefited from having the records released would bear the cost and the court was not making a statement aimed at justifying lowering the amount of attorneys' fees awarded. But, the circuit court's statement cannot be viewed as such. The circuit court did not link the citizens of the County having to pay an award of attorneys' fees to any benefit received and, even if it had, consideration of the source of funds for payment of an attorneys' fees award is not warranted under the lodestar framework or the MPIA.

derived from the suit[.]" <u>Kirwan</u>, 352 Md. at 96, 721 A.2d at 207 (citation modified). This line of cases demonstrates that if there is no benefit to the public derived from a lawsuit brought under the MPIA, there ordinarily should not be an award of attorneys' fees. Case law setting forth the principle that a court must consider the benefit to the public in determining the need for an attorneys' fee award in an MPIA case does not stand for the proposition that a court should, or is required to, consider an alleged burden on taxpayers in determining an award. In fact, our case law establishes just the opposite—there should be no award where an action is brought under the MPIA solely to benefit a private party, not the public.

In <u>Stromberg</u>, 395 Md. at 132-33, 135, 909 A.2d at 671-72, upon concluding that Stromberg sought information under the MPIA for its own purpose and "that there really was no public benefit from the actual disclosure[,]" we affirmed the trial court's denial of Stromberg's motion for attorneys' fees. Stromberg was a sub-contractor in the renovation of a college building and, due to delays and budgetary issues, was concerned about whether there were sufficient funds to complete the project. <u>See id.</u> at 123, 909 A.2d at 665. Stromberg requested from the university "various documents relating to the project, including certain monthly reports" prepared by the project manager. <u>Id.</u> at 123, 909 A.2d at 665. After the university turned over unredacted copies of reports, Stromberg filed a supplemental request seeking additional documents, which the university turned over but redacted information in the material. <u>See id.</u> at 123, 909 A.2d at 665.

Stromberg filed a lawsuit against the university to enjoin it from denying access to the redacted information. <u>See id.</u> at 123, 909 A.2d at 665. The university filed a motion

for summary judgment, which the trial court granted. See id. at 123-24, 909 A.2d at 665-66. We issued a writ of *certiorari* on our own initiative and remanded the case, directing the university to permit inspection of an item in the reports, and affirmed the trial court in all other respects. See id. at 124-25, 909 A.2d at 666. On remand, Stromberg filed a motion seeking over $62,000 in attorneys' fees and costs incurred in pursuing the action to enjoin the university from denying access to the redacted information. See id. at 125, 909 A.2d at 667. The trial court found that, although Stromberg substantially prevailed in the action, denial of the motion for attorneys' fees was warranted because, among other factors, there had been no benefit to the public from what Stromberg derived from the lawsuit. See id. at 126, 909 A.2d at 667.

We affirmed the judgment of the trial court and reiterated the well-established principle that, in determining whether to award attorneys' fees, a court must consider, among other factors, the benefit to the public, if any, derived from the suit. See id. at 128, 909 A.2d at 668. We explained that the public benefit factor was derived from a view expressed by Congress when it enacted the analogous provision in the Freedom of Information Act in 1974 and that the Senate Judiciary Committee had described the factor in its report on the bill as follows:

> [A] court would ordinarily award fees, for example, where a newsman was seeking information to be used in a publication or a public interest group was seeking information to further a project benefitting the general public, but it would not award fees if a business was using the FOIA to obtain data relating to a competitor or as a substitute for discovery in private litigation with the government.

Id. at 128-29, 909 A.2d at 668 (citation modified). Quoting from the Senate Judiciary

Committee's report on the bill to add a provision to the Freedom of Information Act, we explained that the Committee had stated that where a lawsuit advances only the private commercial interests of the complainant, *i.e.*, there is no benefit to the public, ordinarily there will not be an award of attorneys' fees:

> There will seldom be an award of attorneys' fees when the suit is to advance the private commercial interests of the complainant. In these cases there is usually no need to award attorneys' fees to insure that the action will be brought. The private self-interest motive of, and often pecuniary benefit to, the complainant will be sufficient to insure the vindication of the rights given in the FOIA. The court should not ordinarily award fees under this situation unless the government officials have been recalcitrant in their opposition to a valid claim or have been otherwise engaged in obdurate behavior.

Id. at 129-30, 909 A.2d at 669 (Citation modified).

We discussed the non-exhaustive list of three factors that a court must be consider when determining whether to make an award of attorneys' fees under the MPIA—the benefit to the public, the nature of the complainant's interest, and whether the agency's withholding of the information had a reasonable basis in law—and concluded that the trial court did not err or abuse its discretion in denying Stromberg's motion for attorneys' fees and costs. See id. at 128, 131-35, 909 A.2d at 668, 670-72.[22] Where there is no indication of benefit to the public and instead an action is brought for a private interest, as in

_____

[22]With respect to the nature of Stromberg's interest in the information, we stated that it was "beyond legitimate dispute" that Stromberg sought and used the information in the reports for its own pecuniary benefit, "to assure itself that there would be sufficient funds to complete the project and pay its invoices for the work it performed" and that Stromberg never indicated any interest in "public dissemination of the information, in order to add to the 'fund of knowledge' regarding the project." Stromberg, 395 Md. at 133-34, 909 A.2d at 671. At no point in Stromberg did we indicate or state that a court must consider taxpayers as the source of an award; in Stromberg, there was no award of attorneys' fees.

Stromberg, an attorneys' fee award would not normally be given.

In the event that a trial court determines that an award may be appropriate where there has been some but little benefit to the public, an attempt to link the factor of benefit to the public, which is a recognized factor in determining whether to make an award in an MPIA case, to consideration of reducing the amount of an award because taxpayers are the source of payment would result in double counting of the circumstances that led the court to determine that the disclosure had been of little to no benefit to the public. In other words, the amount of the award would be necessarily adjusted based on the determination that there had been little benefit to the public. What is baked into GP § 4-362(f) are the concepts that disclosure of information that is of a benefit to the public is to be encouraged, that the award of attorneys' fees is to ensure that actions seeking disclosures to benefit the public will be brought, and that absent benefit to the public ordinarily there should be no award of attorneys' fees.

In this case, the circuit court explicitly found that Sugarloaf's action resulted in benefit to the public. The circuit court concluded that key documents produced "were of legitimate public interest, and did not personally benefit" Sugarloaf and that there was "significant public benefit to the disclosure of these documents." Given the circuit court's finding, it would be out of the question to conclude that the court's statement that the citizens would bear the burden of an award of attorneys' fees could be in any way linked to whether there was an absence of benefit to the public.

Although the circuit court must consider the factors set forth in Maryland Rule 2-703(f)(3), the circuit court is not prohibited from considering additional relevant factors

depending on the circumstances of a case. However, considerations such as the alleged inequity of taxpayers being responsible for payment of an attorneys' fee award and that a governmental unit did not have an evil motive in not responding to a request for documents are plainly not, by themselves, appropriate bases for adjusting a fee award downward in an MPIA case.

The purpose of the MPIA is to secure government transparency with the least cost and delay for a person making a request for records. See Kirwan, 352 Md. at 80-81, 721 A.2d at 199; GP § 4-103(b). We have explained that the MPIA "was established with the over-arching purpose of allowing oversight of the government, resulting in a strong practice of disclosure." Glenn v. Md. Dep't of Health and Mental Hygiene, 446 Md. 378, 385-86, 132 A.3d 245, 250 (2016); see also id. at 380, 132 A.3d at 247 ("To foster transparency in the operation of our State government, disclosure of documents and records relating to the operation of the government is a desirable priority generally."). The statute's attorneys' fee-shifting provision serves as a deterrent to government noncompliance with the MPIA. See Stromberg, 395 Md. at 133, 909 A.2d at 671. And the provisions of the MPIA, including its provision for awarding attorneys' fees and costs to a substantially prevailing complainant, "must be liberally construed to effectuate the [MPIA's] broad remedial purpose." Kirwan, 352 Md. at 81, 721 A.2d at 199 (citation modified).

Reducing an attorneys' fee award on the ground that taxpayers will bear the burden of the award is antithetical to the existence of the fee-shifting provision. In enacting GP § 4-362, the General Assembly was necessarily aware that the government, and ultimately the taxpayers, would bear the financial responsibility of the fee-shifting provisions of the

statute.[23] And, adjusting an attorneys' fee award downward because a governmental unit did not have an evil motive in withholding documents is not consistent with the MPIA's goals of disincentivizing governmental noncompliance with the Act and fostering transparency in the operation of government, or with any of the factors specified in Maryland Rule 2-703(f)(3).

We are mindful of the County's argument that the circuit court's award of attorneys' fees should "be viewed in its entirety, not as a series of isolated statements" and that, at oral argument, the County contended that, so long as the circuit court properly relied on even one pertinent factor, the circuit court properly exercised its discretion in calculating the attorneys' fee award. We are not persuaded by either of the County's positions. Although we agree with the County that the circuit court's opinion should be viewed in its entirety and not as a series of isolated statements, when viewing the circuit court's opinion in its entirety, it is not possible to determine that the court applied the factors set forth in Maryland Rule 2-703(f)(3) and that it did not rely on irrelevant and inappropriate considerations that resulted in an abuse of discretion.

---

[23]Although we have "frequently said that we presume that trial judges know and apply the law in making rulings and rendering decisions, unless we have reason to think otherwise," the principle applies only where there is no "misstatement of law or conduct inconsistent with the law" on the court's part. Harris v. State, 458 Md. 370, 412, 182 A.3d 821, 846 (2018) (citation modified). In this case, the circuit court's reduction of the attorneys' fee award is not entitled to deference on the principle that trial judges are presumed to know the law. It would be inconsistent with the court's own reasoning to conclude that the court considered the factors set forth in Maryland Rule 2-703(f)(3) when in determining the amount of the attorneys' fee award, the court made statements such as it "ascribe[d] no evil motive to county officials," and "unfortunately[,] the citizens of Fredrick County will bear the burden" of the award but did not mention the factors contained in the Rule.

It is evident that Maryland Rule 2-703 and our case law differ from the County's position that as long as the circuit court relied on one appropriate factor, the court properly exercised its discretion in calculating the award, regardless of what may be concluded with respect to other factors applied by the court. This stance is simply not consistent with Maryland Rule 2-703(f)(2), which requires that a court apply the standards set forth in subsection (f)(3), or our case law. In <u>Friolo v. Frankel</u>, 438 Md. 304, 312, 91 A.3d 1156, 1161 (2014), we observed that earlier, in <u>Friolo</u>, 373 Md. 501, 819 A.2d 354, "the trial court failed to provide an explanation of how the lodestar factors affected the amount of the award," and that the case had been remanded "so that the court could apply the lodestar factors," "'so that the parties and any reviewing appellate court can follow the reasoning and test the validity of the findings.'" (Quoting <u>Friolo v. Frankel</u>, 403 Md. 443, 454-55, 942 A.2d 1242, 1248-49 (2008)).

In this case, the circuit court awarded Sugarloaf approximately half of the amount of attorneys' fees that it requested and the only considerations, discussed by the court, that seemingly weighed against granting Sugarloaf an award of the full amount sought consisted of the circuit court's statements that 14 of the documents sought were not required to be disclosed, that it took into account that many of the documents produced were redundant, that it ascribed no evil motive to County officials, and that the taxpayers of the County would bear the burden of the award of attorneys' fees. In the context of its opinion, the circuit court's discussion of not assigning an evil motive to the County and citizens bearing the burden of an award of attorneys' fees can be perceived as the consideration of inappropriate factors that affected the court's decision to award $25,000

in attorneys' fees. It is simply not possible to conclude from the circuit court's written opinion and order of $25,000 in attorneys' fees that it applied the lodestar approach using the factors set forth in Maryland Rule 2-703 and that it determined the attorneys' fee award in a manner that was not an abuse of discretion.

For all of the reasons discussed above, we reverse the judgment of the Appellate Court affirming the $25,000 award of attorneys' fees and remand the case to that Court with instructions to vacate the circuit court's award and to remand the case to the circuit court for it to reconsider the petition for attorneys' fees. On remand, the circuit court should reconsider the petition for attorneys' fees using the lodestar approach and the factors set forth in Maryland Rule 2-703(f)(3). If the circuit court intended the factors it identified in its opinion to relate to any of the factors set forth in Maryland Rule 2-703(f)(3), the court should identify the connection on remand.

As a final observation, in Friolo, 373 Md. at 505, 819 A.2d at 356, we stated that "it is necessarily incumbent upon the trial judge to give a clear explanation of the factors he or she employed in arriving at the end result." In other words, a court is required to provide a clear explanation of the factors it relied on in arriving at an attorneys' fee award, even though the court is not necessarily required to show its work. Although a court is not necessarily required to show its work, it is a best practice for the court to itemize and explain the basis of an award, identifying the bases for any reductions and the associated amounts, and linking the amount awarded to the work performed and the reasons why the award is appropriate under the lodestar approach as adjusted by application of the factors set forth in Maryland Rule 2-703(f)(3).

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND REVERSED IN PART AS STATED IN THE OPINION. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. RESPONDENT TO PAY COSTS.**

Circuit Court for Frederick County
Case No. C-10-CV-22-000369
Argued: March 10, 2026

IN THE SUPREME COURT

OF MARYLAND

No. 32

September Term, 2025

---

SUGARLOAF ALLIANCE, INC.

v.

FREDERICK COUNTY, MARYLAND

---

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

---

Dissenting Opinion by Gould, J., which
Eaves, J., joins.

---

Filed: July 14, 2026

The Majority holds that the trial court abused its discretion by awarding Sugarloaf Alliance, Inc. $25,000 in attorneys' fees. I disagree. The trial court explained that it arrived at that amount after performing a lodestar analysis and after considering the factors relevant in that analysis. I would credit it with having done so. The Majority instead finds objectionable that the court may have reduced the award because the County's taxpayers would bear the burden of the award, because it ascribed no evil motive to County officials, and because it found that certain documents produced were redundant. Read in context, however, the court's discussion of the burden on the County's taxpayers was a response to arguments the County had made and an acknowledgement of an unavoidable feature of the Maryland Public Information Act ("MPIA")—that taxpayers are, in the end, on the hook for any fee award. Because courts are required to look to the benefit to the public when calculating a fee award, a court's recognition that the public will bear the cost of the award cannot be error. Moreover, reviewing the court's opinion with the deference that this discretionary decision is owed, the Majority should have affirmed. Because it did not, I respectfully dissent.

My analysis proceeds in three parts. *First*, I show that the trial court's consideration of the taxpayers' burden was not, as the Majority alleges, legal error; to the contrary, courts *should* be assessing the extent to which the taxpayers would be receiving appropriate value when assessing a fee petition under the MPIA. *Second*, as to the trial court ascribing no evil motive to the County, I show that the Majority errs by failing to accord the trial court the deference it is due. And *third*, I explain why the Majority's concern that the trial court reduced the award because some documents were redundant is misplaced.

I

I begin with the consideration the Majority finds most troubling, and the one on which it errs as a matter of law: the trial court's observation that the County's taxpayers would bear the burden of the award. The Majority holds that "[i]nsofar as the circuit court's statement that citizens of the County would bear the burden of the attorneys' fee award is concerned, the statement is clearly an improper consideration for determination of an attorneys' fee award in an MPIA case." The Majority cites no authority for that proposition, and I am aware of none. Nor is it intuitively obvious. Indeed, the MPIA's plain language and this Court's precedent show otherwise.

A

Under the MPIA, a court may "assess against a defendant governmental unit reasonable counsel fees[.]" MD. CODE ANN., GEN. PROVISIONS ("GP") § 4-362(f) (2014, 2019 Repl. Vol.). If the fees are shifted, they are necessarily shifted to the governmental unit and, by extension, to the taxpayers who fund it. That the taxpayers will shoulder the burden of a fee award is, therefore, baked into the statute. Acknowledging that reality cannot, in my view, be an abuse of discretion.

In fact, consideration of the burden on the taxpaying public should be a mandatory part of the circuit court's analysis of a petition for fees under the MPIA, where the court has discretion both in "the making and [the] amount of an award[.]" *Stromberg Metal Works, Inc. v. Univ. of Md.*, 395 Md. 120, 128 (2006). The factors we have identified for exercising that discretion—in particular, "the benefit to the public, if any, derived from the suit," *Caffrey v. Dep't of Liquor Control for Montgomery Cnty.*, 370 Md. 272, 299 (2002)

2

(citation modified), therefore go to both the making and the amount of an award. Thus, under our settled precedent, the circuit court must calibrate the award to ensure that the taxpayers are getting their money's worth.

That's because MPIA litigation is not always, as the Majority paints it, "socially beneficial litigation." Citing *E. Shore Title Co. v. Ochse*, 453 Md. 303, 337 (2017), the Majority observes that some fee-shifting statutes are designed to encourage lawyers to take on socially beneficial cases where the amount at stake might otherwise be too small to attract counsel. For example, holding a merchant accountable for consumer protection violations or an employer accountable for unpaid wages benefits the public by discouraging similar conduct. The General Assembly has therefore provided for fee shifting in various contexts, such as wage and hour claims, MD. CODE ANN., LAB. & EMPL. § 3-427(a)(3) (2014, 2025 Repl. Vol.), employment discrimination claims, MD. CODE ANN., STATE GOV'T §§ 20-606, 20-1015 (2009, 2021 Repl. Vol.), and consumer protection claims, MD. CODE ANN., COM. LAW § 13-408(b) (1984, 2025 Repl. Vol.). In those settings, the public benefit follows from the nature of the suit itself because the General Assembly enacted the statutes to address a particular social ill. Applying the lodestar factors in such cases fulfills the General Assembly's intent by providing the court with a framework to ensure that the lawyer who took on the socially beneficial litigation is adequately compensated.

MPIA enforcement actions are of a different breed. A request may be made to serve the public's interest in government accountability, or it may be made to serve a purely private interest. In some cases—perhaps most cases—MPIA litigation is socially beneficial. Other cases, though, are more like *Stromberg*. As the Majority discusses,

3

*Stromberg* involved a subcontractor who requested documents from the University of Maryland out of concern that the University's budget was insufficient to complete the renovation of the Student Union building. 395 Md. at 123-24. After substantially prevailing in its MPIA suit, the subcontractor petitioned the trial court for attorneys' fees. *Id.* at 125-26. The trial court denied the petition on the grounds, among others, that "[t]here [was] no benefit to the public apart from what the Plaintiff derived from this suit[,]" and "[t]he nature of the Complainant's interest in the released information [was] private and pecuniary[.]" *Id.* at 126.

On appeal, we affirmed. To determine whether the trial court had abused its discretion when it rendered its decision, we reviewed the trial court's application of the three factors that the Appellate Court enunciated in *Kline v. Fuller*, 64 Md. App. 375, 386 (1985), two of which are relevant for our purposes: the benefit to the public and the nature of the complainant's interest in the information. *Stromberg*, 395 Md. at 128 (citing *Kline*, 64 Md. App. at 386). As to the public benefit, we observed that while, in a general sense, the public always benefits when a court compels a government agency to follow the law, "that is *not* the focus of provisions like" the MPIA. *Id.* at 131. Instead, the public benefit factor is implicated "where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Id.* at 132 (quoting *Blue v. Bureau of Prisons*, 570 F.2d 529, 534 (5th Cir. 1978)). On that score, the subcontractor's fee petition came up short. There was no evidence that the subcontractor intended to share the documents with the public, so "there really was no public benefit

4

from the actual disclosure . . . beyond the general public benefit presumably accruing from *any* disclosure required by a court." *Id.* at 133.

We found the second factor, the subcontractor's interest in the information, similarly wanting. *Id.* at 133. Looking to the legislative history of the Freedom of Information Act, we wrote that "fee-shifting will seldom be warranted 'when the suit is to advance the private commercial interests of the complainant[.]'" *Id.* at 133 (quoting S. Comm. on the Judiciary, S. Rep. No. 93-854, 93d Cong., 2d Sess. (1974)). In such a case, we noted, a fee award is not necessary because the plaintiff's vindication of its private interests is sufficient recompense. *See id.* at 133. Those observations doomed the subcontractor's fee claim. We concluded that it was "beyond legitimate dispute that [the subcontractor] sought and used the information . . . for its own pecuniary benefit" and not "in order to add to the 'fund of knowledge'[.]" *Id.* at 133-34. Because the two factors "weigh[ed] heavily against a fee-award[,]" we held that the trial court properly denied the fee petition. *Id.* at 134-35.

As *Stromberg* shows, litigation over a request made for private ends does not necessarily advance the public good in the same way that enforcement of a wage, discrimination, or consumer protection statute does. That is why the MPIA, unlike those statutes, requires the circuit court to assess the public benefit of the specific suit when it determines, in the exercise of its discretion, whether to require the governmental unit—and ultimately, the taxpayers—to pay *any* portion of the fees incurred by the requesting party. Put simply, that the taxpayers will ultimately foot the bill is why the circuit court must consider the benefit to the public when it exercises its discretion under GP § 4-362(f).

That logic does not, as the Majority suggests, "result in double counting of the circumstances that led the court to determine that the disclosure had been of little to no benefit to the public." In looking to the taxpayer burden, a court does not reduce an award once because the public benefit is limited and then reduce it again because taxpayers will bear the burden of the award. Instead, the court is making one discretionary judgment; namely, how much of a reasonable fee should be shifted to the government in light of the public benefit produced by the suit. The Majority recognizes as much when it states that, if a case produces "some but little benefit to the public," "the amount of the award would be necessarily adjusted based on the determination that there had been little benefit to the public." I agree with that much. Our disagreement thus appears limited to whether it is legal error for a court to acknowledge the justification for that rule—that taxpayers will bear the burden of the award. In my view, it's plainly not. The public-benefit inquiry necessarily accounts for the fact that fees are shifted to the public.

The trial court's finding that, here, there was a "significant public benefit" is not at odds with that reasoning. The court's finding explains why the court awarded fees, but it does not mean that the court was required to award every dollar requested. The public benefit resulting from MPIA cases fall along a spectrum. As in *Stromberg*, a case may be so devoid of public benefit as to justify denying a fee award in full. In another case, the public benefit may be so grand as to support an award of all fees requested. Many cases fall in the middle. The trial court thought that this was one such case, and it's not this Court's job to second-guess that discretionary finding.

6

B

The circuit court's consideration of a fee request under the MPIA involves a three-part analysis. *First*, the court must determine whether the plaintiff is eligible for a fee award, that is, whether it "substantially prevailed" in the matter. GP § 4-362(f). If so, then, *second*, the court must determine whether the fee charged by the attorney is fair and reasonable—that is, whether the hours, rates, and fees would be reasonable if the client were paying the bill out of its own pocket. *Third*, assuming the fee charged by the lawyer passes muster, the court must determine the extent to which that fee should be shifted to the government and thus borne by the taxpayers.

Under that analysis, the factors supplied by our case law and Maryland Rule 2-703(f)(3) to guide the circuit court's discretion in deciding a fee petition under the MPIA serve different purposes. The lodestar factors in Rule 2-703(f)(3) mirror those found in Rule 19-301.5, which govern a Maryland attorney's professional duty not to charge or collect an unreasonable fee. In other words, those factors are geared toward the second layer of the analysis in a MPIA fee petition: whether the legal fee is fair and reasonable regardless of who is paying it.

But the lodestar factors do not, except for the "results obtained" factor, speak as to the third layer of the analysis under the MPIA: how much of the fee is fair to shift to the County. As explained above, that is where consideration of factors such as the benefit to the public, come into play. A fee can be entirely reasonable if charged to the client and still, in the court's discretion, be shifted only in part or not at all. Thus, I do not share the Majority's concern that, after finding that the fees charged by Sugarloaf's attorneys were

7

fair, customary, and reasonable, and that the services were skillfully performed, the trial court considered factors that bear directly on the fairness of shifting some or all of the fee to the taxpayers. The court was right to do so.

C

The court's remark about the taxpayers footing the bill should also be viewed in the context of the specific arguments advanced by the parties. In opposition to the fee petition, the County argued that it would be inequitable for taxpayers to bear roughly $50,000 in fees arising from what it called an internal miscommunication. In response to that argument, the court observed that the citizens of Frederick County would bear the cost of the fee award. The Majority acknowledges this reading. In a footnote, the Majority points out that it "could also be argued" that the court's remark was a reference to the citizens who benefited from the records' release bearing the cost—but then it declines to credit the court with that reading.[1] It should have. When a remark is naturally read in a way that conforms to the law, we should adopt that reading.

II

In my view, the Majority also erred in failing to accord the trial court the deference it is owed. The decision whether and in what amount to award fees under the MPIA "rests within the sound exercise of discretion by the trial judge." *Caffrey*, 370 Md. at 289. A court abuses its discretion only where "no reasonable person would take the view adopted by the trial court," or where it acts "without reference to any guiding rules or principles." *Dabbs*

---

[1] The Majority suggests that even if that's what the court meant, it still had no place in the analysis. For the reasons just explained, I disagree.

*v. Anne Arundel County*, 458 Md. 331, 347 (2018) (citation modified). Unless the court abused its discretion or rested its decision on an erroneous legal conclusion, the award "will not be disturbed on appeal." *Caffrey*, 370 Md. at 290.

The deference owed to the trial court's decision is reinforced by the presumption that a trial judge knows the law and applies it correctly. *Trimble v. State*, 491 Md. 378, 405 (2025). When a court's opinion is ambiguous, we should prefer a reading that accords with the presumption of legal correctness. We should not choose a reading that yields error and reverse on that basis. The remarks the Majority finds objectionable can be read naturally in a way that is consistent with the law. The Majority errs by going out of its way to find error.

A

Consider the Majority's concern with the circuit court's reference to the County's lack of an evil motive. The Majority seems to believe that the circuit court was operating under the mistaken view that the entire fee could not be shifted to the defendant governmental unit unless the government acted with an evil motive. That is, in my view, a strained and unwarranted interpretation of the circuit court's analysis.

This case was not only about access to records. Sugarloaf sued Frederick County and Andrew J. Ford, the County's MPIA Coordinator, seeking statutory and actual damages under GP § 4-362(d)(1), which requires proof that the defendant "knowingly and willfully" failed to disclose requested records. Thus, motive was part of the case. Sugarloaf raised that issue again in its fee petition, arguing that the County's withholding "did not have a reasonable basis in law but, rather, was motivated by the desire to avoid the scrutiny" that

9

disclosure would bring. Did Sugarloaf accuse the County of acting with an evil motive? Not in those words, but Sugarloaf did argue that the records obtained as a result of the suit reflect "a secret plan to develop a portion of Sugarloaf into an Amazon Web Services data center" and "reflect an unlawful attempt to subvert lawful land use in a protected part of Frederick County." The County argued the other side, contending that fees should not be awarded without a knowing and willful violation, an allegation which the trial court had already rejected when it ruled on the merits.

Read in the context of those arguments, the court's statements are not hard to follow. By saying that it "ascribe[d] no evil motive to county officials," the court rejected Sugarloaf's characterization of the County's conduct. But it rejected the County's argument as well. The court held that GP § 4-362(f) "exists independently of its companion subsection (d)(1)-(3), which requires a finding of knowledge and willfulness before 'damages'– including attorneys' fees – can be awarded." It made that point twice and awarded fees even though it found there had been no knowing and willful violation.

The Majority is concerned that treating an evil motive as relevant would raise the burden on a prevailing complainant, requiring it to prove governmental bad faith to recover in full. That concern would have force if the circuit court had imposed such a requirement, but it didn't.

B

The Majority similarly errs by faulting the trial court for pointing out that a substantial number of the documents that Sugarloaf received were redundant. The Majority says it can only guess why the court raised the subject. No guess is necessary. In its fee

10

petition, relying in part on the number of records it obtained, Sugarloaf argued that it had substantially prevailed, and that "[t]he result obtained was total vindication for the Sugarloaf Alliance." The court responded to that argument when it noted that a substantial portion of the documents produced were duplicates and drafts. That observation bears on "the amount involved and the results obtained" under Rule 2-703(f)(3)(H)—a factor the Majority agrees is a proper one. The court did not abuse its discretion by making a comment that addresses a party's argument as to one of the enumerated factors.

C

Although the Majority acknowledges that a court "is not necessarily required to show its work[,]" it still faults the trial court for the award because, according to the Majority, it is "not possible" to tell whether the court applied the lodestar method and the factors set forth in Rule 2-703(f)(3) because the court did not explain how each consideration adjusted the award up or down. But neither the Rule nor our case law requires such an accounting. Rule 2-703(g) requires the court to "state on the record or in a memorandum filed in the record the basis for its grant or denial of an award." The trial court did so in a six-page, single-spaced opinion. The record need only contain "sufficient information" "to enable a reviewing court to follow the reasoning of the trial court[.]" *Lockett v. Blue Ocean Bristol, LLC*, 446 Md. 397, 426 (2016) (quoting *Bd. of Trustees, Cmty. Coll. of Balt. Cnty. v. Patient First Corp.*, 444 Md. 452, 486 (2015)). Here, it did.

The circuit court's reasoning does not need to be reduced to a calculation, and for good reason: It would be impractical to expect as much of trial courts. Section 4-362(f) provides that the court "may assess" reasonable fees that the complainant "reasonably

11

incurred." The factors our cases identify—the benefit to the public, the nature of the complainant's interest, and whether the agency's withholding had a reasonable basis in law, *Caffrey*, 370 Md. at 299—are not readily quantifiable. The same goes for the factors in Rule 2-703(f)(3). The decision to award fees is committed to the trial court's discretion for that reason. The court needs only to consider and weigh these factors and determine the amount it finds reasonable. The court did that here.

III

Read deferentially (as required), the trial court's opinion reflects a permissible exercise of discretion. The court named the correct method, applied the correct factors, responded to the arguments the parties raised, and arrived at an amount it found reasonable. I would, therefore, affirm the judgment of the Appellate Court. Justice Eaves has authorized me to state that she joins this dissent.

Circuit Court for Frederick County
Case No. C-10-CV-22-000369
Argued: March 10, 2026

IN THE SUPREME COURT

OF MARYLAND

No. 32

September Term, 2025

_____

SUGARLOAF ALLIANCE, INC.

v.

FREDERICK COUNTY, MARYLAND

_____

Fader, C.J.
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Dissenting Opinion by Killough, J., which
Eaves, J., joins.

_____

Filed: July 14, 2026

I respectfully dissent. The circuit court found Sugarloaf eligible for an award of attorneys' fees, applied the lodestar method, found the hourly rates and hours expended to be customary and reasonable, considered the results obtained, and exercised its discretion to award $25,000 of the $48,813 requested. That is not an abuse of discretion. I would affirm.

Abuse of discretion is a high standard. It "occurs where no reasonable person would take the view adopted by the [trial] court, or when the court acts without reference to any guiding rules or principles." *Dabbs v. Anne Arundel Cnty.*, 458 Md. 331, 347 (2018) (internal citations and quotation marks omitted). "[T]he decision whether to award counsel fees to an eligible party under the MPIA rests within the sound exercise of discretion by the trial judge[,]" and "absent a showing of abuse of that discretion or a predicate erroneous legal conclusion, the determination to award or deny such fees generally will not be disturbed on appeal." *Caffrey v. Dep't of Liquor Control for Montgomery Cnty.*, 370 Md. 272, 289–90 (2002). The question is not whether another court would have settled on a different amount. The question is whether the circuit court's decision was so far beyond the pale that no reasonable judge could have reached it.

The circuit court's decision was well within the range of reasonable outcomes. The court expressly invoked the lodestar method, cited the factors in the Maryland Rules, and made findings on the factors it discussed. It found the time and labor extensive, the services skillfully performed, and the hourly rates reasonable. It then considered the results obtained—including that 14 of the 136 documents at issue were justifiably withheld and that many of the produced documents were drafts, cover emails, and redundant material—

and made a downward adjustment. That is what the lodestar approach contemplates. As we have explained, the lodestar method "is broader than simply hours spent times hourly rate but also includes careful consideration of appropriate adjustments to that product, which, in almost all instances, will be case-specific." *Friolo v. Frankel*, 373 Md. 501, 505 (2003). The discretion to adjust the initial calculation, up or down, is built into the method itself; indeed, we recognized in *Friolo* that "the adjustments, up or down, may well produce a result that, in the end, has little relationship to the actual time spent on the case" and that such adjustments are "largely case-specific[.]" *Id.* at 529.

The Court concludes that the circuit court "forsook application of Maryland Rule 2-703(f)(3) and considered circumstances that were not appropriate for determination of an attorneys' fee award." Maj Op. at 7. I read the circuit court's opinion differently—and, more importantly, I believe that the Court's reading reflects a degree of scrutiny that is difficult to reconcile with deferential review.

Consider how the Court treats each of the four considerations identified in the circuit court's memorandum opinion. The first—that fourteen documents were justifiably withheld—the Court concedes is not "inherently unacceptable." Maj Op. at 32–33. The second—that many produced documents were drafts, cover emails, and redundant—the Court acknowledges could be understood as relevant to "the results obtained" under Rule 2-703(f)(3)(H) but calls this interpretation "only a guess[,]" because the circuit court did not explain precisely how redundancies affected the award. Maj Op. at 34–35. The third—the circuit court's statement that it "ascribe[d] no evil motive to [C]ounty officials"—the Court concedes is "possibly susceptible to different interpretations" and that "[a]nything is

2

possible." Maj Op. at 36. The fourth—the circuit court's reference to the burden on Frederick County taxpayers—the Court characterizes as "clearly an improper consideration[,]" rejecting the Appellate Court's view that it was merely a "passing reference." Maj. Op. at 40–41. Yet, where the Court itself concedes that the circuit court's reasoning can be read more than one way, it adopts a reading that condemns—rather than one that sustains—the circuit court's discretionary authority. And where the Court finds no such ambiguity—the taxpayer reference, for example—it treats a single observation in a six-page memorandum opinion as sufficient grounds for reversal. Maj Op. at 35–40. That is not extending deference to the circuit court's exercise of discretion. Rather, it is effectively deciding that the result is wrong.

The Court's word choices reinforce the point. In the Court's own words, the circuit court "purported to apply the lodestar approach[.]" Maj Op. at 31. With respect, those are not the words of a court extending deference. They are the words of a court that has already concluded that it disagrees with the result reached. But nothing in the record supports that characterization. The circuit court presided over this case for two years, conducted a bench trial, reviewed documents *in camera*, heard testimony on the fee petition, and issued a six-page memorandum opinion explaining its reasoning. Whatever else may be said of the circuit court's analysis, it was not unreasonable in light of "the amount involved and the results obtained." *See* Maryland Rule 2-703(f)(3)(H).

As for the circuit court's observation that it "ascribe[d] no evil motive to [C]ounty officials," the Court acknowledges that this statement is "possibly susceptible to different interpretations" and that "[a]nything is possible." Maj. Op. at 35. I do not find the circuit

3

court's statement ambiguous. The Court reasons that the circuit court's use of "County officials" in the plural indicates that it was not referring to the disposition of the knowing-and-willful claims against the County's MPIA Coordinator, Andrew Ford. Maj. Op. at 37-38. But the complaint itself alleged knowing-and-willful violations of GP § 4-362(d) against "Defendants"—both the County and Mr. Ford. The circuit court's plural phrasing tracks the complaint's plural phrasing. I read the statement in context as the circuit court's way of acknowledging the mixed results of the litigation. Sugarloaf pursued knowing-and-willful claims against the County's MPIA coordinator through trial and lost. That was a significant component of the case. A trial court considering the overall results obtained can reasonably note that a plaintiff did not prevail on everything it sought. But even if the statement were ambiguous, under the abuse of discretion standard, the question is not whether a trial court's reasoning is susceptible to more than one interpretation. It is whether no reasonable person could take the trial court's view. The circuit court's phrasing was perhaps imprecise, but imprecision is not abuse of discretion.[1] *Cf. Cook v. State*, 488 Md. 354, 382 (2024) (noting that while the post-conviction court, in one place of its memorandum opinion, noted an incorrect standard of review and was "inaccurately

---

[1] The Court draws a distinction between "evil motive" and knowing-and-willful conduct, noting that the former is typically associated with the standard for punitive damages. Maj. Op. at 38 n.20. That distinction exists in our case law for intentional torts and medical malpractice claims, but it exists nowhere in the MPIA, nor have we ever said as such. Furthermore, there is no indication that the circuit court was invoking the distinction that the Court cites. I understand the circuit court as using the term "evil motive" as a colloquial description of the knowing-and-willful claims that Sugarloaf pursued and lost—not as a legal standard it was applying to the fee determination. In my view, to reverse a trial court's exercise of discretion because it used an imprecise phrase in a written opinion, when its meaning is apparent from context, is unwarranted.

4

worded," that its substance was not "doom[ed,]" because it later stated and applied the correct standard).

The Court is on firmer ground with respect to the circuit court's reference to the burden on Frederick County taxpayers. That is a fair point, and I agree that, standing alone, that would be a problematic basis for reducing a fee award under a fee-shifting statute, such as the MPIA. The General Assembly enacted the fee-shifting provision knowing that governmental entities—and by extension taxpayers—would bear the cost. But it was one observation among several in a written opinion that otherwise rested on permissible considerations. We do not ordinarily reverse a trial court's exercise of discretion because one sentence in its opinion could have been better worded or better, omitted. *See id.*

Having said that, even if I shared the Court's concerns about the circuit court's reasoning, I would not remand this case. We are not directing the circuit court to apply a different legal standard. We are not telling it that any particular factor was given too much or too little weight. We are telling it to do what it already did—apply the lodestar method and weigh the factors under Rule 2-703(f)(3). If the practical effect of the remand is that the Court is telling the circuit court to award substantially more in attorneys' fees, we should say so openly.

Finally, as if to confirm that the Court is reversing simply so the circuit court can award a higher fee, the Majority protests that "[w]ithout speculation or conjecture, there is no apparent rational basis for the adjustment of the $48,813.62 requested, which the circuit court described as reasonable, to the $25,000 awarded." Maj. Op. at 40. I disagree. A circuit court that found mixed results—substantial prevailing on document production, but a loss

5

on knowing-and-willful claims; fourteen documents justifiably withheld; many of the produced documents redundant—could reasonably conclude that the full amount requested overstated the appropriate award. One need not reconstruct the precise arithmetic to recognize $25,000 as a result within the range of reasonable outcomes. That the circuit court found the requested fees "customary and reasonable" is not the same as finding that the full amount must be awarded. The lodestar method expressly contemplates adjustment after that threshold determination. *See Friolo*, 373 Md. at 504–05; *E. Shore Title Co. v. Ochse*, 453 Md. 303, 337 (2017).

The Court acknowledges that "a court is not necessarily required to show its work." Maj Op. at 49. But the effect of today's decision is to require exactly that if the trial judge deviates downward from $48,813. The circuit court's opinion identified the method it applied, the factors it considered, and the result it reached. The Court's objection is that the court's written explanation does not allow us to verify, factor-by-factor, that each consideration was proper and properly weighted. That level of appellate scrutiny is more exacting than abuse-of-discretion review, and its practical consequence will be to require trial courts to produce fee opinions that resemble detailed findings of fact and conclusions of law—a requirement that neither Rule 2-703 nor our case law has imposed. What is more, such a standard undercuts the wisdom that "the language of an opinion is not always to be parsed as though we were dealing with language of a statute." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979); *see also Fooks v. State*, 490 Md. 458, 554 (2025) (Biran, J., dissenting) ("[J]udicial opinions are not statutes, and we don't dissect them word-by-

6

word as if they were." (quoting *Kanter v. Barr*, 919 F.3d 437, 454 (2019) (Barrett, J., dissenting))).[2]

In sum, Sugarloaf requested $48,813 in attorneys' fees. The circuit court awarded $25,000. That is not a denial of fees. It is not a token award. It is a considered judgment by the court that watched this litigation unfold from complaint to fee petition. A different judge might have awarded more. A different judge might have awarded less. But that a different judge might have reached a different result is the definition of discretion, not the definition of an abuse of that discretion. I would affirm.

Justice Eaves has authorized me to state that she joins in this opinion.

---

[2] In fact, the Court suggests that "it is a best practice for the court to itemize and explain the basis of an award linking the amount awarded to the work performed and the reasons why the award is appropriate under lodestar approach as adjusted by application of the factors set forth in Maryland Rule 2-703(f)(3)." Maj. Op. at 43. I submit that was done in this case. To the extent what the circuit court did here is insufficient, then what the Court envisions is something to which contested litigation does not lend itself. Claims overlap, unsuccessful efforts contribute to ultimate success in ways that resist quantification, and billing entries rarely map neatly onto discrete outcomes. A trial court cannot reasonably be expected to sift through each entry, segregate the meritorious from the unsuccessful, and produce a written explanation linking every dollar of the award to specific work that bore fruit. That is an unworkable standard that we should not require.